[Civ. No. 11288. First Appellate District, Division One.—May 1, 1940.]

MARA BELL LEMON, Appellant, v. LOS ANGELES TERMINAL RAILWAY COMPANY (a Corporation) et al., Defendants; LOS ANGELES & SALT LAKE RAILROAD COMPANY (a Corporation), Respondent.

George Appell, Cyril Moss, Milton M. Maharam and Bernard W. Freund for Appellant.

E. E. Bennett, Malcolm Davis and Edward C. Renwick for Respondent.

PETERS, P. J.—Plaintiff appeals from a judgment dismissing with prejudice the first cause of action contained in her second amended complaint. This judgment was entered pursuant to an order of the trial court sustaining, without leave to amend, the general and special demurrers of the defendant Los Angeles & Salt Lake Railroad Company to the first cause of action contained in the complaint. This appeal presents similar legal problems to those involved in *Wingard* v. *Los Angeles & Salt Lake Railroad Company*, First Civil No. 11289, *post,* page 757 [102 Pac. (2d) 394]. Each case involves a conveyance of land made many years ago to a railroad corporation. The contention of appellant in each case is that under general law, and under the provisions of a statute in effect when the conveyances were made (Stats. 1880, chap. 57, p. 43, subsequently embodied in sec. 468, Civ. Code) these lands reverted to the grantors when the railroad ceased to use them for railroad purposes. The actions involved on these two appeals are to establish plaintiffs' claimed right to these lands.

So far as pertinent here, the first cause of action in the second amended complaint in the instant case sets forth the following facts: On April 29, 1891, plaintiff Mara Bell Lemon conveyed a portion of a lot in Los Angeles County, owned by her in fee simple as her separate property, to the defendant Los Angeles Terminal Railway Company. That company had been organized in California in 1890 for the purpose of constructing and operating a railroad in Los Angeles and Ventura Counties. This company, a defendant herein, did not join in the demurrer. It constructed its line of railroad across the property conveyed to it by plaintiff, and operated

such railroad until March 5, 1901. On that date it transferred its various properties, including the parcel conveyed to it by plaintiff, to the demurring defendant and respondent, Los Angeles & Salt Lake Railroad Company, a Utah corporation, with an office in California. That company entered into an agreement with the Union Pacific Railroad Company whereby the latter company was permitted to use, for railway purposes, the tracks and equipment of respondent across the property conveyed by appellant. It is alleged that a railroad was operated across the land up to May, 1934; that on May 28, 1934, the respondent filed an application with the interstate commerce commission requesting permission to abandon its railroad where it traverses the land here involved; that on June 30, 1934, the interstate commerce commission, by order, authorized respondent to abandon the railroad after July 30, 1934; that on December 6, 1935, the respondent petitioned the railroad commission of California for approval of the removal of its tracks where they cross the land here involved, which approval was granted on December 21, 1935.

The complaint does not allege that the deed from appellant to the Los Angeles Terminal Railway Company was limited in any way. The allegation is that plaintiff conveyed the described parcel to the grantee "for and as a part of its railway system". There is no allegation in the complaint, nor is it contended on this appeal, that the deed contained any such restriction—in fact, in the briefs it is conceded that the deed was without qualification as to use, and was in form sufficient to convey to the grantee title in fee simple absolute.

A second cause of action set forth in the complaint, as to which the demurrers were overruled, relates to a strip of land conveyed by appellant to the Los Angeles Terminal Railway Company by a deed expressly restricting use of the conveyed premises "for railroad purposes only", and providing for reversion to the grantor if such use should cease. Counts three and four of the complaint, as to which the demurrers were not sustained, are quiet title counts in the usual brief form, one count relating to the land involved on this appeal and the other to the land described in the second cause of action. The sufficiency of the allegations of these last three counts are not involved on this appeal.

Appellant contends that without express statutory direction, under general law, and without regard to the provisions of the statute of 1880, *supra,* because of the nonuse, the property has reverted to her. It is contended that in view of the fact that the corporation grantee in the deed was organized to operate a railroad, and under its articles of incorporation and the statutory provisions relating to railroad corporations was authorized to acquire lands for railroad purposes only, on abandonment of such use the lands reverted to her. ■
Stated another way, it is appellant's contention that a railway corporation can never hold land in fee simple absolute, regardless of the provisions in the deed by which it takes title, but holds all of its properties subject to an implied condition subsequent. This is no longer an open question in this state. It is now settled that a railroad corporation can acquire a fee simple title where there are no express conditions or limitations in the deed. (*City of Oakland* v. *Schenck,* 197 Cal. 456, 466 [241 Pac. 545]; *Palmer* v. *Los Angeles etc. Ry. Co.,* 55 Cal. App. 519, 521 [203 Pac. 1012].) The problem was considered and fully discussed in *Midstate Oil Co.* v. *Ocean Shore R. R. Co.,* 93 Cal. App. 704, where, at page 707 [270 Pac. 216], it was stated: "Title in fee simple to land may vest in a railroad company. (*Behlow* v. *Southern Pacific R. R. Co.,* 130 Cal. 16 [62 Pac. 295]; *Hannah* v. *Southern Pacific R. R. Co.,* 48 Cal. App. 517 [192 Pac. 304]; *Palmer* v. *Los Angeles etc. Ry. Co.,* 55 Cal. App. 519 [203 Pac. 1012].) And in the case of *City of Oakland* v. *Schenck,* 197 Cal. 456 [241 Pac. 545], Mr. Justice Waste, speaking for the court, said: 'In Illinois, a railroad company can acquire land, whether by voluntary purchase or otherwise, for railroad purposes as defined in its charter. It does not hold land, as does the ordinary owner, with the right to use it for any purpose to which it may be adapted. . . .' *In this state there is no such restriction on the right of a railroad company. It may acquire the fee in land by a direct purchase,* although it may obtain only an easement for railroad purposes, if it resort to proceeding in eminent domain.' [Italics ours.]

"The deed from Henry J. F. Butts et al. to the Ocean Shore Railway Company must be measured by its own terms. There is nothing in the deed which in any way limited the company in the use that it might make of the land. The

fact that the deed makes use of the words 'right of way' in one of its calls in the description does not limit the use to which the lands may be put. We must hold that the deed conveyed the fee. Such being the case, did the railroad company lose its fee to the lands by nonuser or abandonment? The question is one of first impression in this state.

"In 33 Cyc., at page 221, the general rule concerning loss of lands or right by a railroad company by reason of forfeiture or abandonment is stated as follows: 'A railroad company's easement in its right of way or other land may be lost by abandonment or surrendered (citing *McLemore* v. *Charleston etc. R. Co.*, 111 Tenn. 639 [69 S. W. 338]), but where the land is conveyed to the railroad company in fee its title thereto is not lost by nonuser or abandonment (citing *Watkins* v. *Iowa Cent. R. Co.*, 123 Iowa, 390 [98 N. W. 910]; *Enfield Mfg. Co.* v. *Ward*, 190 Mass. 314 [76 N. E. 1053]).' To the same effect are the following cases: [Citing many cases.]

"As opposed to this rule respondent relies principally on the case of *Abercrombie* v. *Simmons*, 71 Kan. 538 [114 Am. St. Rep. 509, 1 L. R. A. (N. S.) 806, and note, 81 Pac. 208]. In that case the court in holding a railroad company takes a mere easement, and not a title in fee, under a deed conveying to it land for purposes of right of way, and that the title reverts to the grantor upon the abandonment of the road, even though the deed contains covenants of warranty, confined its decision to cases where the contract of conveyance shows that it 'was sold and received for use as a right of way' and did not pass upon the power generally of railroads to purchase land in fee. The decision as thus restricted is supported by the authorities. There is nothing in the deed, in the case at bar, however, showing that the land was 'sold and received for use as a right of way'.

"Respondents say that it bases its right to prevail in this action upon sections 465 and 468 of the Civil Code of California, relating to the powers of railroad companies. Respondent argues that under section 465 of the Civil Code a railroad company cannot acquire a fee in land acquired for a right of way, although the deed may be absolute in form, and upon abandonment of the land so conveyed for right of way purposes it reverts to the original owners or their ·successors in interest. We have already pointed out that a railroad company may acquire the fee to lands by direct

purchase and we cannot construe section 465 of the Civil Code, when read as a whole, so as to change the rule when the land is acquired for right of way purposes. Subdivision 7 of the section specifically provides that railroad companies have 'power to purchase lands, timber, stone, gravel or other materials to be used in the construction and maintenance of its road, and all necessary appendages and adjuncts, or acquire them in the manner provided in title 7, part 3, Code of Civil Procedure, for the condemnation of lands. . . . ' And section 354 of the Civil Code provides that 'every corporation, as such, has power . . . to purchase, hold, and convey such real and personal estate as the purpose of the corporation may require, not exceeding the amount limited in this part'.''

Appellant urges that the above cases, and particularly the Midstate case, should be overruled as unsound. We think, however, that the rule of law stated in those cases should not be overruled, but should be followed, not only because the principle has become a rule of property, but also because the rule is inherently sound. We do not agree with appellant that what was said in the quoted portion of the Midstate case, *supra*, was *dicta*, but believe that it constituted an alternative ground for the opinion. ■ It is well-settled that where two independent reasons are given for a decision neither one is to be considered mere *dictum*, since there is no more reason for calling one ground the real basis of the opinion than the other. The ruling on both grounds is the judgment of the court and each is of equal validity. (*Bank of Italy etc. Assn.* v. *Bentley*, 217 Cal. 644 [20 Pac. (2d) 940] ; *People* v. *Reid*, 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435] ; *East Bay Mun. Utility Dist.* v. *Kieffer*, 99 Cal. App. 240 [278 Pac. 476, 279 Pac. 178] ; *Union Pacific Co.* v. *Mason City Co.*, 199 U. S. 160 [26 Sup. Ct. 19, 50 L. Ed. 134].)

■ In view of this conclusion, appellant's right to recover, if any exists, must rest on the provisions of the Statutes of 1880, chapter 57, page 43, later embodied in substantially the same form in section 468 of the Civil Code. That statute, as passed in 1880, is entitled: ''An Act to compel railroad corporations, or individuals owning railroads, to operate their roads.'' The body of the Act reads as follows: ''Section 1. From and after the completion of any railroad, or the completion of such portion thereof capable of

being operated, it shall be the duty of the corporation, or individual owning the same, to operate it; and upon the failure of said corporation or individual so owning said road to keep the same, or any part thereof, in full operation for the period of six months, its or his right to operate the same in whole or in part, as the case may be, shall be forfeited; and the lands occupied for the purposes of its or his road, so far as the same shall not be operated, shall revert to the original owners, or their successors in interest. A railroad shall be deemed to be in full operation when one passenger train, or one mixed train, is run over it once each day in each direction and a sufficient number of freight trains to accommodate the traffic on said road.

"Sec. 2. This Act shall not be construed to apply to a case where the operation of the road is prevented by the act of God, nor to a case where the operation of said road, together with its branch or trunk lines, does not yield income sufficient to defray the expenses of maintaining and operating the same in connection with its said branch or trunk lines.

"Sec. 3. The Railroad Commissioners of the State of California shall have the power to examine and determine the question whether said road, together with its said branch and trunk lines, does or does not yield income sufficient to operate the same.

"Sec. 4. This Act shall take effect immediately."

In 1905 the provisions of this statute, so far as pertinent here, were made a part of section 468 of the Civil Code although the original statute of 1880 was not then expressly repealed. The code section remained unchanged until 1923, when a provision was added empowering the railroad commission to authorize discontinuance of a branch line for such period of time and upon such conditions as it might determine without forfeiting the right to operate the road. (Stats. 1923, chap. 246, p. 493.) In 1937 the Statute of 1880, *supra,* was expressly repealed, without a saving clause (Stats. 1937, chap. 897, p. 2479), and section 468 of the Civil Code was amended (Stats. 1937, chap. 898, p. 2479). The section, as then amended, omitted all reference to the reverting of land to the grantors upon six months' failure to operate, and for that part of the section which had followed the language of the Statutes of 1880, *supra,* substituted the following: "The Rail-

road Commission of California shall also have full power and authority to authorize the discontinuance of operation in whole or in part of any line of railroad for such period of time and upon such conditions as the Railroad Commission may in its discretion determine, without forfeiture of the right to operate the same.''

The complaint in the present action was filed on August 30, 1935.

It is appellant's main contention in this case, as well as in the Wingard case, *post*, page 757, that the provisions of the 1880 statute must be read into the deeds executed by the plaintiffs so as to create a statutory condition subsequent, resulting in a reversion to the grantors upon the failure of the defendant to operate the road for six months under conditions not permitted by the statute, or, if this theory not be sound, that the effect of the statute was to cause a forfeiture to the grantors at the end of the six-month period.

The first contention cannot be sustained in view of the holding in the several cases above cited, and particularly in view of the decision in the Midstate case, *supra*, to the effect that a railroad corporation, if the deed is sufficient, acquires a fee simple title. If appellant were correct, every deed to a railroad company would be subject to a statutory condition subsequent. The statute of 1880 was not intended as a limitation on the power of the grantor to grant, or on the power of the grantee to receive. It is a statute passed in the exercise of the police power to compel railroads to operate for the benefit of the public. Its provisions cannot be read into the deed any more than the numerous other police provisions with penalties attached regulating utilities can be read into each deed received by the utility.

The second contention is equally untenable. Respondent points out many reasons why the forfeiture claimed was not self-executing, and why appellant cannot here recover. It is first urged that a private person may not maintain an action to establish a forfeiture and reversion of the property for breach of the public duty to operate before there has been a determination in a proceeding to which the state is a party that the railroad has forfeited its right to operate. Apparently, this contention has never been passed on in this state. In two cases in which on the particular facts there involved the decision was not rested on the 1880 statute or on section

468 of the Civil Code, the author of the opinion voiced the question without passing on it. (Conrey, P. J., in *Hannah v. Southern Pac. R. R. Co.,* 48 Cal. App. 517, at p. 523 [192 Pac. 304]; Sloss, J., in *Home R. E. Co.* v. *Los Angeles Pac. Co.,* 163 Cal. 710, at p. 713 [126 Pac. 972].) The contention seems to us to be sound. In view of the fact that as disclosed by its title, the statute of 1880 was passed not to benefit grantors or to reimburse them for any damage caused by the abandonment of the railroad, but "to compel railroad corporations . . . to operate their roads", the statute was obviously passed for a public rather than a private purpose. Moreover, by its terms the statute provides that the forfeiture and reversion shall take place only upon the forfeiture of the right to operate. Under such circumstances, as a protection to the public, there is a sound and compelling reason for holding that an adjudication of forfeiture of the right to operate in a proceeding to which the state is a party is a condition precedent to the right of a private person to maintain an action to establish a forfeiture of the railroad property. Under sections 2 and 3 of the Statutes of 1880, *supra,* the forfeiture does not take place if caused by act of God or if the railroad does not yield income sufficient to operate it, and the railroad commission is given power to determine this question. In the present case neither the railroad commission nor the interstate commerce commission, in the proceedings had before those bodies, determined that the respondent has forfeited its right to operate by reason of the breach of the statutory duty to operate.

In addition, it is our opinion that the repeal in 1937 of the statute of 1880, *supra,* without a saving clause, and the amendment of section 468 of the Civil Code in the same year, constitute a complete bar to the cause of action here involved. Even if the statute of 1880, *supra,* and section 468 of the Civil Code prior to its amendment in 1937, did afford a grantor a remedy for the recovery of lands abandoned for railroad purposes without a determination first in a proceeding to which the state is a party, that the railroad has breached its duty to operate, the repeal and amendment respectively of those statutes extinguished such remedy. This conclusion follows from several basic premises. In the first place, whatever rights existed in appellant, such rights were not predicated on the contract between the parties, because

the conveyance made by appellant to respondent, as already pointed out, was an unconditional conveyance of the fee simple title. (*Midstate Oil Co.* v. *Ocean Shore R. R. Co.*, 93 Cal. App. 704 [270 Pac. 216].) ▮ Furthermore, this right of action was a right unknown to the common law and is predicated solely upon the statutes involved. Whether the statute be construed as remedial or penal in character, it follows that the repeal of the statute before the securing of a final judgment extinguished the cause of action. (*Moss* v. *Smith*, 171 Cal. 777 [155 Pac. 90].) ▮ However, there can be no reasonable doubt but that the statute is penal in character. In view of the title of the statute of 1880, quoted *supra*, and in view of the provisions of the statute, it is apparent that the statute was passed by the state in the exercise of its police power over utilities to compel railroads to operate for the benefit of the public. The forfeiture provided is a penalty to induce performance of the duty to operate. The legislature could not have intended that the statute was primarily for the benefit of grantors. The obvious purpose and hope of the legislature was that no grantor would ever receive any benefit from the statute, and no grantor would receive such benefit unless the railroad failed in its duty to operate. To effectually enforce that duty the legislature saw fit to confer on grantors of railway property the power of enforcing a forfeiture if the railroad failed in its duty. But the right to enforce such forfeiture was conferred without regard to whether the grantor did or did not suffer any special damage by reason of the failure to operate. In fact, the grantor, under the statute of 1880, was entitled to enforce the forfeiture whether or not he retained any other land that would be damaged by the abandonment of the railroad, or whether or not he suffered any other damage of any kind by reason of such abandonment. For the purposes of the statute, the legislature could have provided that, upon breach of the duty to operate, the property was forfeited to the state, or could be forfeited at the suit of any citizen of the state. If this analysis of the statute be sound, and we think it is, then the statute is obviously a penal and not a remedial statute. (*County of Los Angeles* v. *Ballerino*, 99 Cal. 593 [32 Pac. 581, 34 Pac. 329].) ▮ It is true, of course, that the repeal of the statute in 1937 could not affect vested rights. But the rights of appellant were not vested. No person has

a vested right in an unenforced statutory penalty or forfeiture. (*Moss* v. *Smith, supra*; *Anderson* v. *Byrnes*, 122 Cal. 272 [54 Pac. 821].) For these reasons it has been held in a long line of cases that the repeal of a statute creating a penalty, running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty. The same rule applies to remedial statutes unknown to the common law. (*Napa State Hospital* v. *Flaherty*, 134 Cal. 315 [66 Pac. 322]; *Anderson* v. *Byrnes, supra*; *First National Bank* v. *Henderson*, 101 Cal. 307 [35 Pac. 899]; *People* 'v. *Bank of San Luis Obispo*, 159 Cal. 65 [112 Pac. 866, Ann. Cas. 1912B, 1148]; *Moss* v. *Smith, supra*.) The Supreme Court of this state, in a decision rendered since the filing of the briefs herein, has recently reviewed many of these cases in holding that a right or remedy unknown to the common law and dependent entirely on a statute is extinguished by the repeal of the statute. (*Southern Service Company, Ltd.*, v. *County of Los Angeles*, 15 Cal. (2d) 1 [97 Pac. (2d) 963].) The rule is clearly stated at page 11 as follows: "The legislature may withdraw such a statutory right or remedy, and a repeal of such a statute without a saving clause will terminate all pending actions based thereon." The court, at page 12, quotes with approval from *People* v. *Lindheimer*, 371 Ill. 367 [21 N. E. (2d) 318, 124 A. L. R. 1472], in part as follows: " ' . . . there is no vested right in a public law which is not in the nature of a private grant, and, however beneficial a statute may be to a particular person or however injuriously the repeal may affect him, the legislature has the right to abrogate it. . . . The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered.' "

Other states have applied the above-mentioned rules to actions to recover statutory penalties imposed on utility corporations for violation of regulatory statutes. Thus in *Denver & R. G. Ry. Co.* v. *Crawford*, 11 Colo. 598 [19 Pac. 673], it was held that repeal of a statute imposing double damages on a railroad guilty of killing stock and failing to file a description

of the animals with the county clerk extinguished all causes of action not reduced to final judgment. The court held that a party could have "no such thing as a vested interest in an unenforced penalty". This case was cited and the above language quoted with approval in *People* v. *Bank of San Luis Obispo, supra,* and the case was cited with approval in *Anderson* v. *Byrnes, supra.* See, also, *Miller* v. *Chicago & N. W. Ry. Co.,* 133 Wis. 183 [113 N. W. 384] ; *Union Pac. Ry. Co.* v. *Proctor,* 12 Colo. 194 [20 Pac. 615] ; *Pensacola & A. R. Co.* v. *State,* 45 Fla. 86 [33 So. 985, 110 Am. St. Rep. 67] ; *Western Union Tel. Co.* v. *Smith,* 96 Ga. 569 [23 S. E. 899] ; *Mix* v. *Illinois Cent. R. Co.,* 116 Ill. 502 [6 N. E. 42].

■ Appellant presents no satisfactory answer to the above reasoning. It is contended that under the authority of *Arcata* v. *Arcata & M. R. R. R. Co.,* 92 Cal. 639 [28 Pac. 676], and *Los Angeles Ry. Co.* v. *Los Angeles,* 152 Cal. 242 [92 Pac. 490, 125 Am. St. Rep. 54, 15 L. R. A. (N. S.) 1269], a forfeiture took place automatically after the six months' non-user, and hence was not affected by the 1937 repeal, the rights having become vested in the *interim.* Those two cases involved the interpretation and legal effect of certain *conditional* franchises granted to street railway companies. In the Los Angeles Railway Company case, for example, by the express terms of the ordinance granting the railway company a franchise, a time limit was fixed within which the work must be completed, and it was expressly provided that, if the work was not completed within the time specified, the franchise was forfeited as to the portion remaining uncompleted. This constituted an express limitation on the estate granted. Moreover, section 502 of the Civil Code provided that failure to complete the work within the time limits there fixed *"works a forfeiture of the right of way"*. (Italics ours.) It was held that either under the express terms of the franchise or under the terms of the statute which there became part of the grant, there was a limitation on the estate of the railroad, and upon the happening of the condition, the estate was terminated. That is a far different situation than is here presented. Here the deed did not limit the estate of respondent, and the statute did not become part of such deed in the sense that it limited the estate of the grantee. In the present case, under the contract (the deed) between appellant and respondent, the latter secured an absolute, unconditional fee simple

title. In the case referred to, the contract between the parties expressly limited the right granted. The statute there involved unequivocally provided what the ordinance granting the franchise must contain, and provided that noncompliance with the terms of such franchise "works a forfeiture". The statute of 1880 provides that under certain limited conditions the right to operate the road "shall be forfeited" and the lands "shall revert to the original owners". As was already pointed out in this opinion, we think when this statute is properly interpreted it was intended as a protection to the public, and that, as a condition precedent to the enforcement of the forfeiture by a private grantor, it was necessary to first have it determined in a proceeding in which the state was a party that the railway had forfeited its right to operate. Secondly, it seems apparent to us, that, in view of the nature of the title secured by respondent, and in view of the language, purposes and intent of the statute, the forfeiture was not self-executing and would not take place until there was a judicial determination of the forfeiture.

Appellant contends that it is the law that a common-law forfeiture does not take place until adjudication of the forfeiture, but that under a statutory forfeiture *it may be provided* that the forfeiture takes place on the commission of the offense. To this argument, as applied to the facts herein presented, there are three answers. In the first place, as already held, the forfeiture does not take place until it is determined in a proceeding in which the state is a party that the railroad has forfeited its right to operate. In the second place, the statute of 1880 does not provide for a self-executing forfeiture. In view of the rule of strict interpretation of forfeitures, all intendments are against such an interpretation. (*Kaiser Land & Fruit Co.* v. *Curry*, 155 Cal. 638 [103 Pac. 341].) Only clear compelling language will permit such an interpretation. In the third place, even in the case of a so-called self-executing forfeiture, the title of the party, whether it be an individual or the state, to whom the property is forfeited, is not complete upon the forfeiture. The title can be perfected only by a judicial determination. This was clearly determined by the Supreme Court in *People* v. *Broad*, 216 Cal. 1 [12 Pac. (2d) 941]. At page 3 it is stated: "Even where, as here, the statute declares that a forfeiture takes place at the time of the commission of the offense, such

forfeiture is not fully and completely operative and effective, and the title of the state [to which the property there involved was forfeited] is not perfected until there has been a judicial determination.'' The court also points out that, upon such judicial determination, the title of the person to whom the property is forfeited dates back to the commission of the offense. But here, before such judicial determination, the statute imposing the penalty was repealed.

There is a fundamental distinction between forfeitures for breach of conditions contained in the grant or franchise creating the right, and forfeitures resulting from a statute which imposes a penalty for violation of a statutory duty. In the latter case the forfeiture cannot be completely self-executing so as to divest the owner of his property, without a judicial determination of the facts constituting the forfeiture.

In view of these conclusions it is not necessary to pass on the several other points raised by respondent to sustain the judgment.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.