WEST INDIA OIL COMPANY (P. R.), Plaintiff and Appellee, *v.* RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 9288. Argued April 3, 1946.—Decided May 20, 1946.

*E. Campos del Toro, Attorney General,* and *Carlos Santana Becerra, Assistant Attorney General,* for appellant. *José Carbia Miranda* and *Juan Orlando Herrero* for appellee.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

During the years 1936, 1937, and 1938, the West India Oil Company (P. R.) entered into contracts with the Government of Puerto Rico for the sale to the latter of certain amounts of gasoline, oil, kerosene, and other petroleum products. Prior to the making of those contracts, the company paid the excise taxes on the products sold and deliv-

ered to the Government, such payment having been made at the time of the introduction of the products into Puerto Rico. On March 16, 1943, the Treasurer of Puerto Rico informed the company that it owed the Government $664.32 on account of an excise tax of 1 per cent on the amount of certain contracts, in accordance with subdivision 5 of § 16, under the title "Other Excises," of Act No. 85 of 1925 (Laws of 1925, p. 584), and an excise tax of 2 per cent on other contracts, in accordance with the same Act, as amended by Act No. 2 of August 31, 1938 (Spec. Sess. Laws, p. 3). The Treasurer also imposed administrative fines amounting to $65, which increased the claim to the total sum of $729.32. The company paid it under protest, and brought an action in the District Court of San Juan to recover the sum thus paid, plus interest thereon and expenses.

The basis of the action brought is that the levying and collection of an excise tax on the contracts for the sale and supply of gasoline, materials, and products to the Insular Government, under subdivision 5 ("Other Excises") of § 16 of the Internal Revenue Law of Puerto Rico, in addition to the excise taxes previously levied and collected by the Government, under the same Internal Revenue Law, upon the sale, transfer, use, consumption, or introduction in Puerto Rico of those same materials and products, constitutes double taxation not authorized by the statute.

The case was submitted to the lower court upon a stipulation signed on November 12, 1943. On November 8, 1945, the lower court rendered judgment for the plaintiff, ordering the refund of the sum claimed, plus interest thereon at the legal rate from the time of the filing of the complaint, and costs. The Treasurer then took the present appeal, and as an only ground thereof he urges that on November 8, 1945, the District Court of San Juan had no jurisdiction or power to render the judgment appealed from.

■ The jurisdictional question involved herein was not raised before the lower court. We must consider and pass upon it before deciding the case on the merits.

■ The procedure authorized for the collection and return of taxes paid under protest is really an action against the People of Puerto Rico. The latter has given its consent to be sued, by providing that the complaint be directed against the Treasurer of Puerto Rico as a party defendant. *Méndez* v. *Buscaglia, Treas.,* 64 P.R.R. 707.

The law in force on April 15, 1943, when the complaint herein was filed, was Act No. 8 of April 19, 1927 (Laws of 1927, p. 122), as amended by Act No. 17, approved November 21, 1941, Special Session (p. 54). Section 3 of that Act, as amended, provided that "A taxpayer who . . . shall have paid under protest the whole or any part of any tax may, within the term of thirty (30) days from the date of payment, file a sworn complaint against the Treasurer of Puerto Rico in the corresponding district court (for the return of the amount protested)* . . . . . "

There is no doubt—and the Treasurer so admits—that at the time of the filing of the complaint the District Court of San Juan had jurisdiction to take cognizance of the case. *Serrallés* v. *Sancho, Treasurer,* 53 P.R.R. 619.

On May 13, 1941, there was approved Act No. 172 to create the Court of Tax Appeals of Puerto Rico (Laws of 1941, p. 1038). Section 4 of that Act, as amended by Act No. 32 of November 21, 1941, Special Session (p. 114), provided that "The Court shall have jurisdiction to revise *the assessment and reassessment of personal and real property* and shall take cognizance of all claims which may be brought before it by interested parties against the decisions of the Treasurer of Puerto Rico which may affect the levying and payment of *property taxes, income taxes, and inheritance*

---

* Matter in parentheses seems to have been inadvertently omitted from the English text of the Section (Spec. Sess. Laws 1941, p. 56).

*taxes."* (Italics ours.) As may be seen, the statutory provision just quoted did not affect in any way the special jurisdiction conferred on the district courts in cases involving the return of excise taxes paid under protest.

On May 15, 1943, there was approved Act No. 169 (Laws of 1943, p. 600), to amend Act No. 172 of May 13, 1941, whereby the Court of Tax Appeals of Puerto Rico was created. By virtue of the new Act, the Tax Court of Puerto Rico was created, and it was provided:

"Section 4.—The Tax Court shall have *exclusive* jurisdiction to take cognizance of all cases of revision of the assessment or reassessment of . . . . . property . . . . . and of all actions , . . . . and claims of any kind, relating to or affecting the levying, collection, payment, *return, or reimbursement* of all kinds of taxes, including *excise* and income taxes, the Victory Tax, inheritance and license taxes, and any other taxes or imposts, as well as to take cognizance of taxes improperly paid, or paid in excess, or unlawfully collected, the return of which may have been refused by the Treasurer. . . . ." (Italics ours.)

The new Act took effect on August 14, 1943, or 2½ months after the Treasurer had filed his answer.

Section 3 of said Act No. 169 of 1943 provides that all laws, resolutions, or parts thereof in conflict with the Act are thereby repealed.

The contention of the appellant Treasurer is that immediately upon the taking effect of Act No. 169 of 1943, which does not contain any "saving clause" as to pending cases, the District Court of San Juan lost the special exclusive jurisdiction to take cognizance of this suit which had been conferred upon it by Act No. 17 of November 21, 1941, amending Act No. 8 of 1927.

The plaintiff company on the contrary maintains that, since it filed its complaint at a time when the district court had jurisdiction to take cognizance of the case, the plaintiff acquired a vested right in the remedy granted to it by the statute for claiming before the district court the return of

the sum paid under protest; that the jurisdiction of the district court could not be affected by Act No. 169 of 1943 as to the cases which were pending before that court at the time the Act was approved, inasmuch as the Act did not expressly repeal the statute which conferred jurisdiction on the district courts; and, lastly, that implied repeals are not favored by the courts.

■■ The remedy granted by the Legislature to a taxpayer for the recovery of taxes paid under protest may be altered, modified, or entirely abolished at the will of the lawmaker. *Brainard* v. *Hubbard,* 12 Wall. (79 U. S.) 1, 14, 20 L. ed. 272; *The Assessor* v. *Osborne,* 9 Wall. (76 U. S.) 567, 19 L. ed. 748.

The general rule established by the federal decisions which we have examined is that "when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed," and that the courts lack jurisdiction to render judgment in a suit after the repeal of the act under which it was brought and prosecuted, where the repealing statute does not contain a saving clause covering the jurisdiction over pending cases.[1]

In *Smallwood* v. *Gallardo,* 275 U. S. 56, suit was brought, in the United States District Court, for an injunction to restrain the collection of taxes. A decree denying the injunction was affirmed by the Circuit Court of Appeals, and the case was taken to the Federal Supreme Court on a writ of certiorari. On March 4, 1927, after the rendition of the decision by the Circuit Court of Appeals, Congress amended

---

[1] *Ex parte McCardle,* 7 Wall. (74 U. S.) 511; *Railroad Co.* v. *Grant,* 98 U. S. 398; *In re Hall,* 167 U. S. 38; *Birdseye* v. *Shaeffer et al.,* 37 Fed. 821; *Fairchild* v. *United States,* 91 Fed. 297; *Bird* v. *United States,* 187 U. S. 120; *Parr* v. *Colfax,* 197 Fed. 302; *Hallowell* v. *Commons,* 239 U. S. 506; *Western Union Telegraph Co.* v. *Louisville & Nashville Railroad Co.,* 258 U. S. 13; *Kline* v. *Burke Construction Co.,* 260 U. S. 226; *U. S.* v. *Chambers,* 291 U. S. 217, 223; *Van Horne* v. *Hines,* 122 F. (2d) 207, *cert. denied* 86 L. ed 552.

§ 48 of the Organic Act of Puerto Rico so as to provide: "That no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the District Court of the United States for Puerto Rico."

The question argued before the Supreme Court was whether the case had become moot by virtue of the amendment to the Organic Act. From the opinion of the Supreme Court, which was delivered by Mr. Justice Holmes, we copy the following:

"To apply the statute to present suits is not to give it retrospective effect but to take it literally and to carry out the policy that it embodies of preventing the Island from having its revenues held up by injunction; a policy no less applicable to these suits than to those begun at a later day, and a general policy of our law. Rev. Stat. § 3224. So interpreted the Act as little interferes with existing rights of the petitioners as it does with those of future litigants. There is no vested right to an injunction against collecting illegal taxes and bringing these bills did not create one. *Hallowell* v. *Commons*, 239 U. S. 506, 509. This statute is not like a provision that no action shall be brought upon a contract previously valid, which in substance would take away a vested right it held to govern contracts then in force. It does not even attempt to validate previously unlawful taxes. It simply makes it plain that these cases are not excepted from the well known general rule against injunctions. *It does not leave the taxpayer without power to resist an unlawful tax,* whatever the difficulties in the way of resisting it.

"  *        *        *        *        *        *        *

"Of course it does not matter that these cases had gone to a higher Court. When the root is cut the branches fall. . . As the bills were dismissed upon the merits . . . the decrees should be reversed and the cases sent back with directions to dismiss for want of jurisdiction." (Italics ours.)

There are numerous decisions of state courts, wherein application has been made of the rule that "Whenever a statute from which a court derives its jurisdiction in particular cases is repealed, the court can not proceed under the re-

pealed statute, even in suits pending at the time of the repeal, unless they are saved by a clause in the repealing statute."[2]

The plaintiff-appellee has cited decisions of this court, in which it is held that implied repeals are not favored by the law;[3] also federal decisions and cases from the State of California,[4] holding that no statute, however positive in its terms, is to be construed in the sense of interfering with existing contracts, rights of actions, or with vested rights, unless the intention that it shall so operate is expressly declared; and that under that rule, "even though the words of a statute are broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may hereafter arise, unless the language employed expresses a contrary intention in unequivocal terms."

The facts in the case of *Duke Power Co.* v. *South Carolina Tax Commission*, 81 F. (2d) 513, cited by the appellee, are almost identical with those herein. Let us see.

The Duke Power Co. brought an action to recover taxes paid under protest pursuant to an Act of the State of South Carolina entitled "Power Tax Act." After the lower court had rendered a decision sustaining a demurrer to the complaint, the portion of the Act authorizing the payment of taxes under protest and suit for their recovery was repealed by the Legislature of South Carolina. The Attorney General moved to dismiss an appeal taken to the Circuit Court

---

[2] *Hunt* v. *Jennings*, 5 Blackford 195, 33 Am. Dec. 465; *Zintsmaster* v. *Aikin*, 90 N. E. 82; *Schoepfling* v. *Calkins*, 25 N. Y. S. 696; *McClain* v. *Williams*, 73 N. W. 72; *Texas Mexican Ry. Co.* v. *Jarvis*, 15 S. W. 1089; *Terry* v. *McClung*, 52 S. E. 355; *Vail* v. *Denver*, 115 P. (2d) 389; *Lemon* v. *Los Angeles Terminal Ry. Co.*, 102 P. (2d) 387; *Ex parte Cavitt*, 118 P. (2d) 846; *People* v. *Lindheimer, Collector*, 21 N. E. (2d) 318.

[3] *Guerra et al.* v. *Hernández et al.* 37 P. R. R. 97; *Cortés et al.* v. *Crehore et al.*, 24 P. R. R. 403; *People* v. *Garzot*, 24 P. R. R. 215; *Portela* v. *Registrar*, 22 P. R. R. 81; *People* v. *Concepción*, 21 P. R. R. 296.

[4] *Twenty Per Cent Cases*, 87 U. S. 179, 22 L. ed. 339; *Berg* v. *Traeger*, 210 Cal. 323; *Hopkins* v. *Anderson*, 218 Cal. 62.

of Appeals for the Fourth Circuit, and urged that the consent of the State to be sued had been withdrawn by the repealing statute and that the court lacked jurisdiction to proceed further with the hearing of the action.

The said Act prohibited the issuance of injunctions to prevent the collection of taxes, but it provided that any taxpayer feeling aggrieved by such collection might pay the taxes under protest and sue for their recovery. The new Act of 1935 repealed the provision of the former statute, which prohibited injunctions and authorized the payment under protest. The Circuit Court of Appeals held that the plaintiff company was entitled to proceed with the suit which had been instituted under the prior Act, and said:

"The general rule, of course, is that the repeal of a statute has the effect of blotting it out as completely as if it had never existed and of putting an end to all proceedings under it. 59 C.J. 1189, 1190, and cases there cited. But it is equally well settled that a repealing act ought not be construed, if any other construction is possible, as intended to affect rights which have vested under the act repealed or as requiring the abatement of actions instituted for the enforcement of such rights. (Citing authorities.)

"...    .    .    .    .    .    .    .    .

"There can be no question but that appellants had a vested right with respect to the moneys paid under protest pursuant to the provisions of the statute. The state took and held such moneys subject to the duty of refunding them, if the court should hold that they were not properly collected; and, in the event of such holding, claims for their repayment were given preference over all other claims against the state treasury. It was almost as though they were to be held in escrow by the state authorities to abide the determination of the suit instituted for their recovery. The repeal of the statute authorizing payment under such conditions and suit for the recovery of the amounts so paid, ought not be construed, under the authorities above cited, as destroying rights with respect to payments already made under such a statute, or as abating suits instituted for their recovery, but as applying prospectively, if such a construction is reasonably possible, which we think it is. And that it was the intention of the Legislature that the repealing statute should be construed to operate prospectively and not to affect rights

acquired and actions commenced under the statute repealed, appears from the fact that the section of the statute repealed embraces a prohibition against the granting of injunctions to restrain the collection of taxes as well as the provision permitting payment under protest and suit for recovery. The intention of the repealing act was evidently to restore the right to injunctive relief for the future, and for the future to withdraw the right of payment with suit for recovery.

"This construction of the statute is required if violation by the Legislature of the most elementary principles of reason and justice is to be avoided. The act of 1931 had taken away the right to enjoin the collection of taxes thought to be illegal or unjust, and in lieu of that right had given, as an adequate remedy at law, the right to pay under protest and sue for recovery. To take away the right of the taxpayer to proceed with such suit, after he had been deprived of the right to proceed in equity under the promise of the state that he should have such right, and after the state had collected the disputed taxes by virtue of such promise, would be so unreasonable and unjust, that we ought not indulge the presumption that an honorable public body such as a state Legislature intended its acts to have any such effect. As said by the Supreme Court in United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278, and quoted with approval in Sorrells v. United States, 287 U.S. 435, 447, 53 S. Ct. 210, 214, 77 L. Ed. 413, 86 A.L.R. 249: 'All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter.' Certainly the 'sensible' construction of the repealing statute here under consideration is that it was intended to apply prospectively and not to cases where rights had accrued with respect to payments made under the statute repealed.

"  *        *        *        *        *        *        *

"The state can, of course, withdraw at any time its consent to be sued; and the right to withdraw same is not affected by the contract clause of the Constitution (article 1, § 10), or, ordinarily, by the limitations of the Fourteenth Amendment. (Citing authorities.) But the repealing statute here, if given the interpretation contended for by appellee, does more than withdraw the state's

consent to suit. It wipes out all rights of the appellants with respect to the moneys paid under protest; for no one would contend that, in the absence of the statute, a taxpayer would have any rights with respect to tax payments already made. As there is no separate provision of the repealing statute dealing with the remedy, the entire statute would necessarily be held invalid in so far as it applied to transactions occurring prior to its passage. The question in this respect is clearly ruled by the recent decision of the Supreme Court in *Lynch* v. *United States, supra,* 292 U. S. 571, at page 586, 54 S. Ct. 840, 78 L. Ed. 1434. A statute which attempts by the same provision to destroy both a right and a remedy succeeds in destroying neither.

"And, if the statute merely attempted to take away the remedy of suit against the state, a grave constitutional question would be presented under the circumstances here appearing. Suit against the state was given in lieu of hearing on injunction as a means of affording due process to the taxpayer. Whether the state, after thus defeating a hearing on injunction against its officers by consenting to be sued, could withdraw that consent without denying the taxpayer due process in violation of the Fourteenth Amendment is a grave question which we do not feel it necessary here to decide."

Upon the case being taken to the Federal Supreme Court on a petition for certiorari, such petition was denied. See 298 U. S. 669, 80 L. ed. 1392.

It is impossible to distinguish the *Duke Power Co.* case, *supra,* from the one at bar.

The Insular Legislature, by an Act of March 8, 1906, entitled "An Act to define *injunctions* and to prescribe when they may be issued, etc.," provided:

"An injunction cannot be granted:
" *       *       *       *       *       *       *

"7. To prevent the levying or collection of any tax levied by the laws of the United States or of Puerto Rico."

(Sec. 4 of the Act and § 678 of the Code of Civil Procedure, 1933 ed.)

On March 9, 1911 (Laws of 1911, p. 124) there was approved an Act providing for the payment of taxes under protest and establishing the procedure for the recovery

thereof by suit against the Treasurer of Puerto Rico in a court of competent jurisdiction. That Act provided that if judgment were rendered in favor of the taxpayer "the Treasury shall repay the same, which payment shall be made in preference to other claims on the Treasury." The Act further provided that no other remedy would lie in cases of taxes wrongfully collected; and that no writ for the prevention of the collection of taxes or revenues should be issued in any case, the only remedy available to the taxpayer being the payment of the tax under protest and suit for the recovery thereof. The Legislature abolished the equitable remedy, the injunction, but it was careful to grant to the taxpayer an adequate legal remedy, such as the payment under protest and the bringing of an action, thus preventing the taxpayer from validly claiming that he had been deprived of his property without due process of law.

The Legislature has kept in force, up to the present time, the prohibition against the use of injunctions to prevent the collection of taxes or excises. And up to August 14, 1943, the date on which Act No. 169 of 1943 became effective, it maintained in full force and effect the enactment whereby the districts courts were vested with jurisdiction to take cognizance of actions for the recovery of excise taxes paid under protest. It was under that Act (No. 8 of April 19, 1927, as amended by Act No. 17 of 1941) that the West India Oil Co., P. R., resorted to the District Court of San Juan, after paying to the Treasury of Puerto Rico the sum now sought to be recovered.

It is true that Act No. 169 of 1943, by its § 4, confers on the Tax Court exclusive jurisdiction of all actions relating to the return or reimbursement of all kinds of excises; and that the Act contains no saving clause with respect to the jurisdiction of the district courts over pending suits brought under the previous statute. But it is also true that the new Act makes no express or implied provision for depriving

the district courts of jurisdiction over cases pending before them or for transferring such jurisdiction to the Tax Court. Nor does the new Act provide any other adequate remedy whereby the plaintiffs in the pending suits might be able to obtain an adjudication of their right to the return of the sum paid under protest.

Hence, we have before us a situation which is as unfavorable to the taxpayer as was the one presented by the *Duke Power Company* case.

The construction of Act No. 169 of 1943 suggested by the appellant Treasurer would not be either just or reasonable. Were we to accept it, we would be depriving the plaintiff corporation of a right, which was acquired by virtue of the Act in force at the time the payment under protest was made, and which was based on the promise of the Government that if the judgment should be adverse to the defendant, it would return the amount paid under protest, together with interest thereon at the rate of 6 per cent per annum from the date of the filing of the complaint.

Since said Act is susceptible of a just and reasonable construction, "we are to presume, out of respect to the lawgiver, that the statute was not meant to operate retrospectively; and if we call to our attention the general sense of mankind on the subject of retrospective laws, it will afford us the best reason to conclude that the legislature did not intend in this case to set so pernicious a precedent." See *Dash* v. *Van Kleeck*, 7 Johns. (N. Y.) 477, 5 Am. Dec. 291.

We are of the opinion that the only just and reasonable interpretation to be given to the statute is that the intention of the lawmaker was that § 4 of the Act, *supra,* should be applied prospectively, that is, to cases originating subsequent to the taking effect of the statute; and that the district courts should retain their jurisdiction to further

hear and decide the cases of claims for the recovery of excise taxes paid under protest which might be pending at the time the new Act became effective.

The District Court of San Juan acted with jurisdiction in rendering the judgment appealed from.

The appellant Treasurer does not challenge the judgment of the lower court on the merits. That judgment is in accord with the holdings of this court in *West India Oil Co.* v. *Domenech, Treasurer,* 49 P.R.R. 783, *John B. Harris, Inc.* v. *Sancho, Treas., per curiam* decision 49 *D.P.R.* 969, and *Casal* v. *Sancho, Treas.,* 53 P.R.R. 386.

The judgment appealed from should be affirmed.