730 P.2d 267

**BROWN WHOLESALE ELECTRIC COMPANY, a California corporation, Plaintiff-Appellee,**

v.

**H.S. LASTAR COMPANY, an Arizona corporation; and the Continental Casualty Insurance Company, a corporation, Defendants-Appellants.**

**No. 1 CA–CIV 7735.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 2, 1986.

Reconsideration Denied Dec. 5, 1986.

Strong & Pugh, P.A. by William K. Strong, and Elizabeth A. Yancey, Phoenix, for plaintiff-appellee.

Lee, Theisen & Eagle by David W. Eagle, Phoenix, for defendants-appellants.

OPINION

CONTRERAS, Judge.

Plaintiff Brown Wholesale Electric Company [hereinafter "Brown Wholesale"] filed suit on a contractor's license bond to recover for materials it had furnished on a public works construction project. On appeal, we must decide whether the trial court erred in granting summary judgment for Brown Wholesale on the bond against the defendants-appellants H.S. Lastar Company [hereinafter "Lastar"] and The Continental Casualty Insurance Company [hereinafter "Continental"]. We conclude that summary judgment was improperly granted. The statute which provided Brown Wholesale a remedy in this case was amended by the legislature and the amendment effectively repealed the remedy.

Brown Wholesale is a supplier of electrical goods. It supplied electrical materials and equipment to Grace Company for use in the construction of a public works project, the Peoria Boys and Girls Club, in Peoria, Arizona. Grace Company had been a subcontractor on the project for which Lastar had been the general contractor. Continental is a surety and provided Lastar with a $15,000 bond that Lastar was required to file with the registrar of contractors pursuant to A.R.S. § 32–1152 in order to be licensed as a contractor in Arizona.

At the time Lastar originally posted the bond in 1978 and until the statutory scheme was changed in 1981, the legislature required that all construction projects, both residential and nonresidential, be regulated. The term "contractor" had been broadly defined in A.R.S. § 32–1101:

In this chapter, unless the context otherwise requires, the term "contractor" is synonymous with the term "BUILDER" and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, OR PROVIDE MECHANICAL OR STRUCTURAL SERVICE FOR ANY SUCH STRUCTURE, PROJECT, DEVELOPMENT OR IMPROVEMENT. The term contractor includes subcontractors and specialty contractors, floor covering contractors and landscape contractors other than gardeners.

*See* Laws 1977, ch. 153, § 1 (capitalized portion indicates addition to statute). The version of A.R.S. § 32–1152 in effect prior to July 1, 1981, required that a bond be posted in the appropriate amount designated in subsection B by all contractors in order to be licensed. *See* Laws 1980, 3d Spec.Sess., ch. 1, § 8. Section 32–1152(D) provided in relevant part:

> The bonds or deposit required by this chapter shall be for the benefit of any person covered by this subsection. The bond or deposit shall be subject to claims ... by any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract.

*See* Laws 1980, 3d Spec.Sess., ch. 1, § 8.

In 1981, the Arizona legislature determined that it was no longer necessary to regulate contractors other than those engaged in residential building activities and accordingly made major changes in the statutory scheme of A.R.S. §§ 32–1101 to –1168. The purpose of the amendments was explained in the notes to the session laws:

> The legislature finds that regulation of the commercial and industrial construction business, including public works, by the registrar of contractors agency is not necessary for the protection of the public health, safety and welfare, and that it is in the public interest to deregulate such business. It is the purpose and intent of the legislature to continue the registrar of contractors agency in order to protect the public health, safety and welfare by providing for the continued licensing, bonding and regulation of contractors engaged in residential construction. It is the further purpose of the legislature to provide improved protection for owners and lessees of property who contract for the construction or alteration of residential structures by establishing the contractors' recovery fund and the contractors' recovery fund board.

*See* note following A.R.S. § 32–1101 (West Supp.1985), citing Laws 1981, ch. 221, § 1. Among the statutory changes was the amendment of A.R.S. § 32–1101 to make the term "contractor" synonymous with the term "home builder." Laws 1981, ch. 221, § 2. Subsection C was added to A.R.S. § 32–1101, providing that "[o]nly contractors as defined in this section are licensed and regulated by this chapter." Laws 1981, ch. 221, § 2. Among the extensive changes made in A.R.S. § 32–1152, former subsection D, providing for claims against the bond, became subsection E:

> The bonds or deposit required by subsection B of this section shall be for the benefit of and shall be subject to claims by ... any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract.

Laws 1981, ch. 221, § 20. The effective date for these amendments to the statute was July 1, 1981, and the legislature expressly provided that the "act is effective retroactively to July 1, 1981." Laws 1981, ch. 221, § 38. In 1982, the Arizona legislature added clarifying language to A.R.S. § 32–1152(E). The statute, as amended in 1982, provides in pertinent part:

> E. The bonds or deposit required by subsection B of this section shall be for the benefit of and shall be subject to claims by ... any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract *involving a residential structure.*

Laws 1982, ch. 194, § 1 (emphasized portion indicates addition to statute).

Brown Wholesale filed suit on the contractor's license bond naming Lastar and Continental as defendants. It sought recovery of $10,969.85 for materials it had supplied to the project and for which it had not been paid, along with pre-judgment interest, costs and attorney's fees. Brown Wholesale supplied all the materials for which it seeks recovery prior to the date that the amendments to A.R.S. §§ 32–1101 to –1168 went into effect on July 1, 1981. The defendants do not dispute that the materials were ultimately used on the project. The materials, however, were not

used in the construction project until *after* July 1, 1981, according to the evidence presented with the cross-motions for summary judgment.

Brown Wholesale contended in its motion for summary judgment that the amended statute could not be applied retroactively to prevent it from recovery on the bond for the materials it supplied prior to the effective date of the amendment. The defendants in their cross-motion for summary judgment argued that the amendment of the statute prevented Brown Wholesale from recovering on the bond. The trial court found for Brown Wholesale, ruling that "Plaintiff's right against the bond in question matured when Plaintiff furnished the materials for the project, that the 1981 Amendments to Article 32 are not retroactively applicable to defeat Plaintiff's claim, as a matter of law...." The trial court awarded Brown Wholesale judgment in the amount of $10,943.75, pre-judgment interest of $2,482.62, costs of $908.61 and attorney's fees of $4,475.45 for a total of $18,-810.43. Lastar and Continental appeal the judgment and argue that summary judgment in their favor should have been granted. Additionally, they contend that even if Brown Wholesale was entitled to judgment, no attorney's fees should have been awarded, or, alternatively, that the total judgment including attorney's fees could not exceed the $15,000 face amount of the bond.

Before examining the grounds of the trial court's ruling and the substance of the parties' arguments, we comment briefly on Brown Wholesale's contentions that there are additional grounds for upholding the trial court's ruling. We find that these same contentions have been decided against Brown Wholesale in a previous opinion of this court. *See Brown Wholesale Electric Co. v. Merchants Mutual Bonding Co.*, 148 Ariz. 90, 713 P.2d 291 (App.1984).

Brown Wholesale argues at length in this appeal that the scope of the statutory bond is determined by the statute in effect at the time of execution of the bond.

However, this argument was considered and rejected in *Brown Wholesale Electric Co. v. Merchants Mutual Bonding Co.* We noted in that case that "[s]ince the only purpose for the bond was to satisfy the statutory requirement, the parties' intention would only be served by limiting the scope of the bond's liability to conform to the statute, as amended." *Id.* at 96, 713 P.2d at 297. Part of Brown Wholesale's argument concerning the scope of the bond is that since defendant Lastar had chosen not to supply a new bond but had instead left the old bond (posted when the former statute was in effect) on file, claims could continue to be made against the bond for materials used on nonresidential jobs. This argument is also rejected in *Brown Wholesale Electric Co. v. Merchants Mutual Bonding Co.*:

> Because licenses for commercial construction expired as of July 1, 1981, and the only license that could be renewed was one for residential construction, bonds which were required as a condition of licensure pursuant to A.R.S. § 32–1152 ceased to have any application to commercial construction after July 1, 1981.

*Id.* Thus, the fact that Lastar chose to leave its original bond on file rather than supply a new one did not expose it to claims on nonresidential construction.

Brown Wholesale also argues that the 1981 amendment to A.R.S. § 32–1152, which provided in subsection E for recovery against the bond, allowed recovery against all "construction contracts." In line with this argument it contends that claims against the bond were not limited to those arising out of residential construction projects until A.R.S. § 32–1152(E) was amended in 1982 and that the 1982 amendment was not made retroactive. It concludes, therefore, that the bond is still available to it even though it did not supply materials for a residential project. We find that this issue too was decided in *Brown Wholesale Electric Co. v. Merchants Mutual Bonding Co.*, where we held that the language of the 1981 amendments to

A.R.S. § 32–1152(E) should be interpreted as providing for recovery against the bond only against construction contracts involving residential structures. The legislature intended this result even before its clarifying amendment in 1982. *Id.* at 95, 713 P.2d at 296.

We now turn to the central issue for decision, which is whether Brown Wholesale, by delivering materials for the construction project prior to the effective date of the statutory amendments, acquired a vested right against the bond which was filed by Lastar. If it did, the statutory amendments cannot apply retroactively to defeat the vested right. *State v. Levasseur,* 118 Ariz. 597, 578 P.2d 1026 (App. 1978) (statutory change will not be applied retroactively when to do so would impair a vested right).

The appellants contend that no claim against the bond arose until the materials had been used in the project and that the evidence before the trial court when summary judgment was granted demonstrates that the materials were not used until after the statutory amendments were in effect. They point out that both the bond and the statute, even before amendment, expressly required "use" of the materials in the construction project. In support of their argument that the claim does not arise until the materials are used, appellants cite extensively from cases holding that lien statutes do not permit materialman's liens to be perfected unless materials furnished are actually used in construction of the project. *See, e.g., Kerr-McGee Oil Industries, Inc. v. McCray,* 89 Ariz. 307, 361 P.2d 734 (1961). The appellants argue that the lien statutes and the contractor's license bond statutes should be read together because they are *in pari materia. See, e.g., Arizona Gunite Builders, Inc. v. Continental Casualty Co.,* 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). However, as Brown Wholesale correctly points out in response, these cases have no bearing on the issue in this case. The lien cases cited by the appellants do not discuss the timing of the use of materials. They merely hold that

the lien attaches only where the materials have been used in the construction.

■ In the present case, there is no dispute as to whether the materials were used in the project. They were used. The issues in this case are (1) whether a claim on the bond matures after delivery but before the materials are used, and (2) whether "use" is necessary before judgment may be entered against the bond. We conclude that the first question is answered by other language in the statute itself. Both the 1981 amendment of A.R.S. § 32–1152(E) and the pre-amendment version of subsection D contain a limitations provision which states that time to commence suit against the bond runs from the "commission of the act or delivery of goods or rendering of services on which the suit is based...." It is clear from this language that the legislature did not require the materials to be used before the cause of action would arise since it provided for the limitations period to run from the time of delivery of goods. We agree with Brown Wholesale's analysis that it is not necessary for the materials to be used in order for the cause of action to arise, but we further conclude that failure to use the materials in residential construction as required by the amended statute is a condition subsequent which defeats the right of recovery. The parties dispute who would have the burden of proving that the materials had been used. We make no comment regarding who would have the burden of proof on this issue since it is not necessary to decide this case.

■ While we agree that Brown Wholesale's cause of action under the statute arose when the goods were delivered and before the statute was amended, we do not find that this prevents the amended statute from defeating its claim where the goods were used in nonresidential construction thereafter. Brown Wholesale's claim in this instance did not become a vested right because the claim at the time the statute was amended was dependent upon the contingency of "use." It is well settled that rights are not vested if they are qualified by contingencies. In *State v. Estes Corp.,*

27 Ariz.App. 686, 558 P.2d 714 (1976), Division Two of this court stated:

> A "vested right is one which is absolute, complete, and unconditional to the exercise of which no obstacle exists, and which is immediate and perfect in itself not dependent upon a contingency." *Hutton v. Autoridad Sobre Hogares de la Capital,* 78 F.Supp. 988 (D.C. Puerto Rico 1948). A "vested right" is an immediate fixed right to present or future enjoyment where the interest does not depend upon a period or an event that is uncertain. *Steinfeld v. Nielsen,* 15 Ariz. 424, 139 P. 879 (1914).

*Id.* at 688, 558 P.2d at 716.

 Our supreme court recently again acknowledged the proposition that any right conferred by statute may be taken away by statute before it has become vested. *Hall v. A.N.R. Freight System, Inc.,* 149 Ariz. 130, 717 P.2d 434 (1986). After considering the nature of Brown Wholesale's claim, we conclude that application of the amended statute does not impair any vested right for the fundamental reason that Brown Wholesale did not have a vested right at the time the amended statute became effective. Brown Wholesale's claim for recovery against the bond is solely a creation of and dependent on the existence of a statute. There is a general rule of law that an action wholly dependent on the existence of a statute abates if the statute is repealed without a savings clause before judgment is final. *Younger v. Superior Court,* 21 Cal.3d 102, 145 Cal.Rptr. 674, 577 P.2d 1014 (1978); *Kemp v. Day & Zimmerman, Inc.,* 239 Iowa 829, 33 N.W.2d 569 (1948); *Lemon v. Los Angeles Terminal Ry. Co.,* 38 Cal.App.2d 659, 102 P.2d 387 (Cal.Dist.Ct.App.1940); 16A Am. Jur.2d *Constitutional Law* § 672 (1979). A cause of action depending solely on statute is not a vested right protected by the Constitution. *Krause v. Rarity,* 210 Cal. 644, 293 P. 62, 65 (1930). As the Illinois Supreme Court explained in *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 321 (1939), *review dismissed,* 308 U.S. 505, 60 S.Ct. 112, 84 L.Ed.2d 432:

> That the legislature cannot pass a retrospective law impairing the obligation of a contract, nor deprive a citizen of a vested right, is a principle of general jurisprudence, but a right, to be within its protection, must be a vested right. It must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another. If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws, these individuals have no cause to complain.... A retrospective statute affecting vested rights is very generally considered in this country as founded on unconstitutional principles and consequently inoperative and void; but this doctrine is not understood to apply to remedial statutes of a retrospective nature not impairing contracts or disturbing absolute vested rights.... The legislature has the undoubted right to repeal all legislative acts which are not in the nature of a private grant.... The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered.

(Citations omitted.) A similar statement of general law was set forth by Division Two of this court in *In re Dos Cabezas Power District,* 17 Ariz.App. 414, 498 P.2d 488 (1972):

> The general rule is that when proceedings are in process under a statute and have not been completed, and a new act passed, modifying the statute under which the proceedings were begun, the new statute becomes integrated into part

of the old statute as fully as if written therein from the very time the old statute was enacted. *Oliphant v. Carthage Bank*, 224 Miss. 386, 80 So.2d 63 (1955). A statute modifying a previous statute has the same effect as though the statute had all the while previously existed in the same language as that contained in the modified statute, unless the modifying statute contains a saving clause. *Stone v. Independent Linen Service Co.*, 212 Miss. 580, 55 So.2d 165 (1951). Every right or remedy created solely by a modified statute disappears or falls with the modified statute unless carried to final judgment before the repeal or modification, save that no such repeal or modification shall be permitted to impair the obligation of a contract or to abrogate a vested right.

*Id.* at 420, 498 P.2d at 494.

In the present case, Brown Wholesale had not entered into any contract with the defendants and, hence, the statutory amendment causes no impairment of a contract obligation. What we are dealing with is a legislatively created ancillary "remedy" accorded to those who supply materials for use in designated construction projects. The right to proceed against the bond was a remedy created solely by statute which the legislature had the right to repeal and did repeal in this instance. In *Metal Manufacturing, Inc. v. J.R. Porter Construction, Inc.*, 141 Ariz. 412, 687 P.2d 937 (App. 1984), Division Two of this court observed that the effect of the 1981 amendments was to repeal former A.R.S. § 32–1152(D) insofar as it pertained to commercial construction. Obviously, the amendments also repealed A.R.S. § 32–1152(D) with respect to public works construction and left only residential construction covered under the statute. The legislature's repeal of this particular remedy with respect to this type of construction project did not leave Brown Wholesale without a remedy. As Brown Wholesale acknowledges, it still had available the remedy provided by the Little Miller Act, A.R.S. §§ 34–221 to –225. Accordingly, since Brown Wholesale had not obtained a final judgment when A.R.S. § 32–1152 was amended, it had no vested rights, and since the statute does not contain a savings clause, the right of action on a nonresidential claim abated when the statutory remedy was repealed.

In view of the foregoing, the summary judgment granted by the trial court in favor of Brown Wholesale is reversed and the case is remanded to the trial court for entry of summary judgment in favor of the defendants. Because we reverse the judgment, we do not reach the issues regarding attorney's fees.

Reversed and remanded with directions.

MEYERSON, J., and McFATE, J. (Retired) *, concur.