458 P.2d 966

**UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Appellant,**

v.

**ST. MARY'S HOSPITAL OF TUCSON, an Arizona corporation, Appellee.**

**UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Appellant,**

v.

**Buchannan M. McKAY, Appellee.**

**Nos. 2 CA–CIV 685, 712.**

Court of Appeals of Arizona.

Division 2.

Sept. 17, 1969.

Robertson & Fickett, by Richard Anderson, Tucson, for appellant.

Holesapple, Conner, Jones, McFall & Johnson, by Harrison G. Dickey, Tucson, for appellee St. Mary's.

Quigley & Lamont, by James E. Quigley, Tucson, for appellee McKay.

KRUCKER, Chief Judge.

These appeals, consolidated by stipulation, arise from two actions on debt. In Action No. 105672 St. Mary's Hospital of Tucson, plaintiff, sued Clifford B. Martin, Guardian of the Estate of Margaret Avery, and his surety, United States Fidelity & Guaranty Company, for the expenses of his ward's hospitalization and medical care of approximately four or five months in the amount of $7,246.11, pursuant to a probate decree previously entered. In Action No. 107095 Buchannan McKay, plaintiff, also sued Clifford Martin as guardian, and his surety, United States Fidelity & Guaranty Company, for amounts due under a judgment entered in his favor in the amount of $1,000, plus interest and costs. Mr. Martin was served in both actions, failed to answer, and his default was entered. In both actions, defendant surety cross-claimed against defendant, Mr. Martin, and entry of default was also obtained in favor of the surety. The court, in both cases, found the guardian breached the conditions of his bond, and plaintiffs McKay and St. Mary's Hospital were granted summary judgment against the defendant surety on the guardianship bond. The surety here appeals both determinations.

Clifford Martin was appointed guardian of his daughter, Mrs. Margaret Ann Avery, March 17, 1967, because of her age and incapacitation resulting from an automobile accident. He executed a surety bond to his ward as obligee, pursuant to A.R.S. § 14–847, in the amount of $15,000. On April 3, 1968, the probate court, whose files are a part of this record, decreed that Mr. Martin had violated the duties of his trust by (1) failing to file an inventory and appraisement, (2) removing himself and his ward to Texas without court approval, and (3) failing to pay the just debts of the estate. The probate file also contains affidavits showing the estate at the time of the probate proceedings contained assets in the form of negotiable checks in the approximate amount of $14,187.10, death benefits of Mr. Avery.

Plaintiffs herein are two of the creditors of the ward's estate. St. Mary's Hospital rendered medical care to the ward following the automobile accident, and as a condition of her release Mr. Martin executed a note for the same amount herein claimed. Plaintiff McKay loaned Margaret Avery's former husband the amount of $1,000 before his death, which had not been repaid. The superior court, in actions prior to the ones at bar, ordered that both be paid.

The actions in this case were instituted to obtain from Mr. Martin the funds adjudged rightfully theirs by the superior court, or, in the alternative, from the surety.

Defendant surety makes the following allegations of error:

(1) An action upon a guardian's bond may not be maintained by a creditor under A.R.S. § 14–804(C).

(2) If such an action is available, it must first be shown that a loss to the guardianship estate has occurred.

(3) There were material issues of fact presented to the court and it was error to grant the motions for summary judgments.

The first question presented by defendant in this appeal is one of first impression in Arizona. A.R.S. § 14–804 provides:

\* \* \* \* \* \*

"C. If there is a breach of a condition of the bond of a guardian, an action may be instituted thereon for the use and benefit of the ward or any person interested in the estate."

The probate decree found that the guardian had breached the conditions of his bond, and at oral argument in the instant case, both counsel admit that Mr. Martin is a defalcating guardian.

In particular, defendant contends that the statutory words "or any person interested in the estate," should not be construed to cover creditors, but was meant to cover only heirs or other successors in interest to the ward.

■ The liability of compensated sureties on statutory undertakings is measured by the terms of the statute for the sureties engage with eyes open to the statute. 50 Am.Jur. Suretyship § 33. · We do not agree with defendant's theory in light of the other statutes in this section. To take services and/or goods for the ward and then refuse payment is not disposing of or managing the "estate according to law." A.R.S. § 14–847, subsec. B(2). And A.R.S. § 14–809, subsec. A sets forth the guardian's duty to pay all just debts of the ward. We believe the creditor can sue on the bond as an "interested party" if assets are sufficient in the estate. A.R.S. § 14–809, subsec. A.

The second issue raised is whether a loss to the estate must first be shown to bring this action. A.R.S. § 14–804, subsec. C requires only that a breach of a condition of the bond occur before instituting an action. Defendant argues that in addition to the breach of condition, a loss to the estate must also be proved, presenting one particularly relevant case, Mitchell v. United States Fidelity & Guaranty Co., 171 Okl. 400, 43 P. 2d 58 (1935). A guardian failed to pay a claim against the estate as ordered by the court. The court stated that even assuming a creditor could sue on the bond, there was no allegation that the estate was injured or unable to pay. Plaintiffs present an interesting case in support of their position, State to use of Durham v. Fidelity & Deposit Co. of Maryland, 132 Md. 464, 104 A. 278 (1918). A creditor sued two guardian's bondsmen and the court held it was the duty of the guardian to pay for the maintenance and education of the ward and failure to do so constituted a breach of the bond. A creditor could resort to suit upon it.

■ We do not believe that the statutory scheme for an action on the bond requires a showing of loss to the estate in addition to a breach of the bond. We believe that "loss to the estate" is a misleading concept because failure to pay debts always will in one sense both benefit and harm the estate. We believe failure to pay legally recognized debts under the statutory mandates is a violation of a guardian's duty and a bond condition and that proof of same is all that is required to bring this action. Cf., 24 Cal. Jur.2d Guardian & Ward § 67.

Defendant contends, in any event, a material issue of fact was presented as to whether there was loss to the estate. Since we have rejected "loss to the estate" as a prerequisite to suit, this contention fails. We believe it was clearly established that the guardian owed two debts and had refused their payment.

■ Defendant also contends that it had a right to try the reasonableness of the debts presented. There appears to be a split of authority on whether in an action against

a surety a default judgment entered against the principal is binding upon the surety in establishing liability or amount. Annot., 59 A.L.R.2d 752. Assuming without deciding that the surety can litigate the reasonableness of the claims at this late date, we believe that the surety in the instant case presented no specific facts at the time of the motion for summary judgment challenging the reasonableness of the claims presented. Defendant's counsel at oral argument admitted no affidavits of fact were presented to the court setting forth challenges to the judgment claims presented. We therefore believe that the trial court had no choice but to grant the motions for summary judgment.

Affirmed.

HATHAWAY and HOWARD, JJ., concur.