560 P.2d 1258

STATE of Arizona, Appellant,

v.

Marvin STANDSBERRY, Appellee.

No. 1 CA–CR 1696.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 30, 1976.

Rehearing Denied Jan. 25, 1977.

Review Denied March 15, 1977.

Michael Irwin, Yuma County Atty., by Bruce A. Jensen, Deputy Yuma County Atty., Yuma, for appellant.

Stephen J. Rouff, Yuma, for appellee.

## OPINION

NELSON, Judge.

Defendant Standsberry was indicted by a Yuma County grand jury in 1975 for first degree arson involving one of his insured

rental properties. After an evidentiary hearing, the superior court suppressed the testimony of the Deputy State Fire Marshal who, after being requested to assist in the investigation by the Yuma Police Department, discovered evidence of arson in connection with the fire in question. The State filed a timely notice of appeal from the suppression order pursuant to A.R.S. § 13–1712(7). We reverse.

The defendant purchased the house in 1974. He did not use it as a residence, but rather as a rental property until the fire on June 25, 1975. Subsequently Detective Mahoney of the Yuma Police Department received information which caused him to suspect that the fire in the property had been the work of an arsonist. During his preliminary investigation Mahoney learned that the dwelling had been unoccupied at the time of the blaze, the tenants having moved three days prior to the fire. Two of the prior tenants, in fact, had been hired by the defendant to tear down the building and were in the process of wrecking it when Mahoney made his initial on-site visit. After advising the wreckers to cease their activities, Mahoney contacted the State Fire Marshal's office in Phoenix for assistance. In response to the request, Deputy Fire Marshal Dale went to Yuma, accompanied Detective Rube to the premises the following day, and conducted his investigation. Upon the completion of his investigation, Dale concluded that the fire had been the result of arson. From the beginning to the end of this investigation, no effort was made, either by the Yuma Police, the Yuma Fire Department, or the State Fire Marshal's office, to obtain a search warrant for the premises in question.

The defendant sought suppression of all evidence obtained as a result of a series of searches of the property in question by Yuma police officers, Yuma Fire Department personnel, and the Deputy State Fire Marshal. The trial court denied the motion as to the evidence and testimony of the Yuma Police and fire personnel. The propriety of that decision is not before us on this appeal and any reference to the conduct of the Yuma police officers and fire department as is necessary to resolve the issue before us is not to be construed as approval or disapproval of the trial court's ruling in this regard. See A.R.S. §§ 13–1712(7) and 13–1713.

The question before us is a narrow one: does A.R.S. § 23–126B require the State Fire Marshal or his designated representative, absent consent of the owner or a tenant, to obtain a search warrant prior to participating in an investigation of fire damage at the request of, and in assistance of, a local police department already in the process of conducting an investigation of a suspected case of arson? We answer the question in the negative and therefore reverse the order of the trial court suppressing the evidence solely on this basis.

The statute in question is part of a complete article of our code added in 1972 establishing the Office of State Fire Marshal. Laws 1972, Ch. 61, § 2; A.R.S. §§ 23–121 through 23–131. The Legislature in Chapter 61 also enacted an additional ground for the issuance of a search warrant based upon an "inspection program authorized by law." Laws 1972, Ch. 61, § 3; A.R.S. § 13–1442(5).

We believe a reading of A.R.S. §§ 23–121 through 23–131 compels the conclusion that the overriding purpose of the legislation was to establish a statewide capability for fire inspection and prevention, as well as minimum standards for fire prevention for all areas of the state. See A.R.S. §§ 23–121, 122, 123, 124 and especially 125, which designates the powers and duties of the fire marshal and divides them into mandatory duties and discretionary duties.

The mandatory duties relate to fire prevention and fire protection:

"A. The fire marshal shall:

1. Assist in the enforcement of state laws and ordinances of cities and counties relating to fire prevention and fire protection.

2. Prescribe minimum standards for fire prevention throughout the state.

3. Cooperate and coordinate with other state agencies in the administration of the state fire protection code."

The discretionary, non-obligatory duties are:

"B. The fire marshal may:

1. Conduct or participate in investigations of causes, origins and circumstances of fires, including cases of possible arson.

2. Provide training in fire fighting and fire prevention and cooperate with educational institutions to provide and further such training.

3. Evaluate, for the purpose of providing information to the Arizona corporation commission, the performance capabilities of private fire protection service corporations that comply with or are applicants under the provisions of § 40–281.

4. Impound necessary evidence in conjunction with investigations of cases, origins and circumstances of fires, in the event that such evidence might be lost, destroyed or otherwise altered if not so impounded.

5. Employ specialized testing services to evaluate evidence and conditions involved in fire investigations."

The statute here in question follows the section on powers and duties:

"§ 23–126. Inspection; consent; search warrant

A. The fire marshal or his designated representative may investigate fire damage and shall carry out periodic inspection programs of buildings and premises to examine or inspect for fire hazards.

B. In carrying out such inspections or investigations the fire marshal or his designated representative shall identify himself to the owner or tenant of such building or premises and seek the consent of such owner or tenant to carry out such inspection. If such consent is refused, or it is not possible to reasonably obtain consent, the fire marshal or his designated representative shall obtain a search warrant for such building or property in compliance with the provisions of title 13, chapter 5, article 2.

C.[1] When the fire marshal is assisting a local fire department in an investigation of fire damage, the authority of the local fire department to investigate such fire damage shall be deemed to include the fire marshal or his designated representative."

We are persuaded that A.R.S. § 23–126 is applicable only to situations where the fire marshal is operating in his fire prevention and fire protection capacity, either as part of an inspection program prior to a fire taking place, or as a follow-up to fires which have already occurred, in order to determine their causes, origins and circumstances to enable the Fire Marshal's office to devise better methods for prevention and/or protection in the future. The statute was not intended to inhibit or aid the fire marshal in his role of assistance to law enforcement agencies in the investigation of cases of possible arson.

In construing statutes it is axiomatic that we must look to the statute as a whole and give a harmonious effect to all of the sections. *Greyhound Parks of Arizona, Inc. v. Waitman,* 105 Ariz. 374, 464 P.2d 966 (1970); *Lombardo v. Pollock,* 21 Ariz.App. 537, 521 P.2d 636 (1974); *Sampson v. Transport Indemnity Company,* 1 Ariz.App. 529, 405 P.2d 467 (1965). Viewed in this light, the picture here is clear.

Prior to the enactment of Chap. 61, *supra,* there was no statutory authority to obtain a search warrant for a purely inspectional or investigative search, absent an ability to show probable cause that a public offense had been committed or was intended to be committed. A.R.S. § 13–1442, *supra,* partic-

1. Although this subsection was added after the searches here under consideration took place, Chap. 76, Laws 1976, the Legislature's determination not to include police departments in the recent amendment *is further support for our* conclusion that the statute is inapplicable where the fire marshal is called in by a local police department to assist in an arson investigation.

ularly subsections 1, 2, 3 and 4 thereof, and § 13–443. When the Legislature mandated periodic inspection programs in subsection A of A.R.S. § 23–126, and determined in subsection B that a search warrant should be required if either the owner or tenant refused consent, or if consent could not otherwise be obtained, i. e., owner or tenant unknown or otherwise unavailable at the time critical to the inspection or investigative program, it was necessary to provide for an additional ground for the issuance of a search warrant, which they did in the very same chapter. Laws 1972, Chap. 61, *supra,* A.R.S. § 13–1442(5).

No one questions the authority of any local law enforcement agency, be it the Yuma Police Department, as here, or any other similar agency, prior to the existence of A.R.S. § 13–1442(5), under a proper set of facts, to obtain a search warrant in connection with an investigation of a possible case of arson. That authority is no different after the enactment of A.R.S. § 13–1442(5) and the state fire marshal sections, A.R.S. §§ 23–121 et seq.

The only reasonable construction of Chap. 61, Laws 1972, *supra,* vis-a-vis its intended impact on possible cases of arson, is that it was to provide law enforcement agencies with additional resources with which to investigate this difficult area of criminal conduct. The Legislature did not intend by enacting A.R.S. § 23–126 to make it either more difficult, or any easier, to obtain physical evidence of arson. What happened in this case makes this conclusion inescapable.

■ Assuming the Yuma authorities were properly on the premises in question (an issue that is not now before us and upon

which we intimate no view, *supra* ), we do not believe it reasonable to conclude that the Legislature intended the fire marshal, after receiving a call for assistance in an arson investigation by a law enforcement agency, to obtain a search warrant, pursuant to A.R.S. §§ 23–126B and 13–1442(5), prior to going on the premises already secured by the police, either by the allegedly sufficient warrantless intrusion here, or by a valid and properly executed search warrant obtained under the other provisions of A.R.S. § 13–1442. Nor would the converse of the situation obtain, where the police, being suspicious of arson in a particular case, but having insufficient evidence to obtain a search warrant under A.R.S. § 13–1442, subsections 1 through 4, and being denied permission to enter by the owner or tenant, request the fire marshal to obtain a warrant based on A.R.S. § 23–126B and A.R.S. § 13–1442(5) in order to gain entrance and confirm their suspicions.[2]

Although the requirement of probable cause is present in both situations, A.R.S. § 13–1443, the probable cause necessary to obtain an inspection or investigation warrant under A.R.S. §§ 23–126B and 13–1442, subsection 5 *is vastly different* (namely, under A.R.S. § 23–126 property is to be searched and inspected by an appropriate official in the interest of the public health, safety or welfare as part of an inspection program authorized by law, and the owner or tenant had refused entrance, or consent cannot reasonably be obtained) than the probable cause necessary to secure a search warrant in a general criminal case. *See* A.R.S. §§ 13–1442 and 13–1443 and cases cited thereunder; *State v. Broom,* 113 Ariz. 495, 557 P.2d 1052 (1976). The rights of the

---

**2.** Nothing in this opinion should be construed in a manner to inhibit the fire marshal or his authorized deputies, including local fire departments, from conducting regular inspections and investigations to determine the causes, origins and circumstances of fires, including cases where the cause of the fire is suspicious and arson is a possibility. If and when, during the course of such an authorized inspection program (*see e.g.* Section 1.7, Fire Code, City of Phoenix) evidence of arson is discovered, the law enforcement agency with jurisdiction to investigate the crime in that area should be immediately notified. It will then be the responsibility of the law enforcement agency, depending upon the circumstances of the given case, to determine what additional investigative measures, including possible search warrants, should be taken to insure the acquisition and preservation of such evidence as may be needed for the criminal prosecution.

public are protected by the warrants required in each case, but the interests involved are not the same and the sanctions to be imposed as a result of the intrusion are vastly different. For fire code violations, fines, county jail time, and possible affirmative action in the form of repairs, construction, etc. are available sanctions. *See generally*: Fire Code, City of Phoenix, Phoenix City Code, Chap. 15, and especially §§ 1.7 and 1.10 thereof and Article 33, Administrative Provisions; *see also* Fire Code, State of Arizona, Industrial Commission of Arizona, May 16, 1973. An arsonist faces a felony conviction and possible imprisonment in the state prison. A.R.S. §§ 13–231 et seq.

It is our opinion that the Legislature did not intend the fire marshal to obtain separate authority when called to assist local police departments in arson investigations. If the police are properly on the premises, the fire marshal's investigation is proper. If not, all the evidence is tainted by an illegal search and seizure by the police. Once again, we do not have before us the propriety of the police investigation resulting in the fire marshal's efforts and voice no opinion on it.

The order suppressing the testimony and evidence offered by the state fire marshal in this case is reversed and the cause is remanded for further proceedings consistent with this opinion.

OGG, Acting P. J., and EUBANK, J., concurring.