563 P.2d 331

**John WATSON dba John Watson Construction Co., Donald D. Watson, and Sentry Insurance Co., a corporation, Appellants,**

**v.**

**Kenneth K. WELTON and Grace Metzler Welton, his wife, Appellees.**

**No. 1 CA–CIV 2944.**

Court of Appeals of Arizona, Division 1, Department B.

April 14, 1977.

Ronald G. Cooley, Joseph K. Brinig, Phoenix, for appellants Watson.

Strong & Pugh, P. A., by William K. Strong, Phoenix, for appellant Sentry Ins. Co.

Law Offices of George M. Ireland, P. C., by George M. Ireland, Prescott, for appellees.

## OPINION

EUBANK, Judge.

This appeal questions whether the trial judge erred in granting judgment against the appellants on two different contractor licensing bonds, issued by the surety pursuant to A.R.S. § 32–1152, where one bond supported a C–31 Masonry Contractor's License, and the other bond did not support a license but instead was issued to support an application for a corporate B–2 General Building Contractor (residence and small commercial) license, which was never made.

The facts are that appellant, John Watson, was a masonry contractor and held a C–31 contractor's license with the Arizona Registrar of Contractors. In compliance with the requirements of A.R.S. § 32–1152, he had filed a $500 performance bond with the Registrar prior to his license being issued, wherein he was the named principal and appellant Sentry Insurance Co. was the named surety. During the period that the C–31 license was in effect, appellant contracted to build a "Four-plex Apartment" in Prescott for the appellees. The terms of this contract exceeded the limitations of appellant John Watson's C–31 Contractor's License and would have required a B–2 General Building Contractor's License. When the construction was approximately 75% completed, disagreement arose between the parties resulting in appellees' filing a complaint against appellants, John Watson and Donald Watson, for breach of contract, for fraudulent misrepresentation that they were licensed general contractors, and against Sentry Insurance Co. as surety on the contractor's bond. The matter was tried to the court sitting without a jury. Following the trial, the court ruled in favor of the appellees, and findings of fact, conclusions of law and judgment were filed accordingly.

The first issue in this appeal revolves around a second contractor's license bond issued on May 15, 1972, to John E. Watson Co. Inc., as principal and Sentry Insurance Co. as surety in the sum of two thousand dollars in support of appellant John Watson's intended application for a corporate B–2 General Contractor's License. The testimony of the Registrar's agent was that no such application was made. The Registrar's file on John Watson confirmed this fact; in addition, John Watson testified that he had not made application for a B–2 license and had, therefore, not sent the bond into the Registrar's office. A copy of this bond No. 02–05149–05 is contained in the record as defendants' (appellants') Exhibit for Identification No. 32, but it was not introduced or

received into evidence. On May 31, 1974, the trial court entered its "Amended Judgment" with the following pertinent findings of fact, conclusions of law and judgment provisions relating to both bonds:

1. *FINDING NO. 22:*

22. That Sentry Insurance Co., Defendant herein, was the issuer of bonds in the total sum of $2,500.00, being the penal amount of its contractor's license surety bond No. 02–05149–05 and No. 02–05149–03, written on behalf of John E. Watson Co., Inc. and John E. Watson as principal, respectively, as required by and pursuant to the provisions of A.R.S. § 32–1152.

2. *CONCLUSIONS OF LAW 4 and 5:*

4. That Sentry Insurance Co., as bonding agent for John E. Watson Co., Inc. and John E. Watson as principal, are, pursuant to the terms of said bonds and the provisions of ARS 32–1152 liable to the plaintiffs in the penal amount of said bonds in force during the year 1972, in the sum of $2,500.00.

5. That plaintiffs should have judgment, jointly and severally against the defendants John E. Watson and Donald Watson and Sentry Insurance Co. for the sum of $13,300.00, the total amount of damages sustained by Plaintiffs as a result of the fraudulent conduct and actions of the defendants John E. Watson and Donald Watson, with the maximum liability of Sentry Insurance Co. being limited to the sum of $2,500.00 in accordance with the provisions of their bonds.

3. *JUDGMENT:*

(a) That the plaintiffs, Kenneth K. Welton and Grace Metzler Welton, his wife, are granted judgment against Sentry Insurance Co., a corporation, as surety in the sum of $2,500.00, being the penal amount of its contractor's license surety bonds No. 02–05149–05 and No. 02–05149–03 written on behalf of John E. Watson Co., Inc. and John E. Watson as principal, respectively.

(b) To the extent paid in satisfaction of this judgment, the above described contractor's license bonds will be deemed fully exonerated upon payment of the sum of $2,500.00, and Defendant, Sentry Insurance Co., upon said payment, is hereby fully released and relieved from any further liability thereunder.

These findings, conclusions and judgment, show that the trial judge treated the two bonds as one bond insuring performance under Watson's C–31 license. We will now turn to each bond separately.

### THE $2000 BOND

The appellants contend that the $2000 performance bond (No. 02–05149–05) was improperly included within the amended judgment because it was a statutory bond under which the surety's risk or liability did not attach until the corporate B–2 General Contractor's License was applied for and actually issued to John E. Watson Co., Inc. We agree and therefore must reverse that part of the amended judgment holding the surety liable under this bond.

A corporate surety, such as Sentry Insurance Co. is authorized to do business and regulated as a form of the insurance industry by Arizona through the Director of Insurance. A.R.S. § 20–257, § 20–1531, § 7–103. In private undertakings, a surety bond has been described by our Supreme Court in *Western Surety Co. v. Horrall,* 111 Ariz. 486, 487, 533 P.2d 543, 544 (1975), as follows:

Suretyship contracts are construed according to the same rules applicable to other contracts. *Cushman v. National Surety Corp. of New York,* 4 Ariz.App. 24, 417 P.2d 537 (1966); Restatement, Security § 88. If a company agrees to be a surety for a particular principal, the contract is understood to be only for that named principal. Any material change in the obligation not assented to by the surety as one of the parties to the contract will discharge the surety from liability.

But where a corporate surety undertakes a surety obligation on a bond (A.R.S. § 7–103) pursuant to a specific statutory requirement (A.R.S. § 32–1152), its liabilities are

measured by the terms of the specific statute. *U.S. Fidelity & Guaranty Co. v. St. Mary's Hospital of Tucson,* 10 Ariz.App. 346, 458 P.2d 966 (1969).

Under the Registrar of Contractor's law, the legislature has created a logical process for interested and qualified persons to obtain a contractor's license. Pursuant to A.R.S. § 32–1122, such a person must file an application with the Registrar, take an examination, undergo a background investigation, and must meet explicit experience requirements in the particular area of license desired. In addition, subsection (B) of § 32–1122, requires the applicant to "file the required fee and bond" with his application. The required "bond" is that specified by A.R.S. § 32–1152. Subsection (A) of § 32–1152 reads:

> Before granting an original contractor's license the registrar shall require of the applicant a surety bond in a form acceptable to the registrar or a cash deposit as provided in this section. No contractor's license may be renewed unless the applicant's surety bond or cash deposit is in full force and effect.

Bond No. 02–05149–05, in the sum of $2000 wherein John E. Watson Co. Inc., is the named principal and Sentry Insurance Co. is the surety, states:

> WHEREAS, the above bounden Principal has made application to the Registrar of Contractors of the State of Arizona for a license to conduct the business of contracting under the classification of B–2 GENERAL CONTRACTOR RESIDENCE AND SMALL COMMERCIAL and tenders this bond to comply with the provisions of § 32–1152, A.R.S., as amended.

■ The record shows that the appellant John Watson obtained this bond with the intention to file an application with the Registrar for a B–2 General Contractor's License, on behalf of his newly formed corporation but that he had not filed the application by the time of trial. The express terms of this performance bond and A.R.S. § 32–1152(D) limits the surety's liability under it to John E. Watson Co. Inc.'s failure to perform a contract under a B–2 General Contractor's License, which was never issued. The license never having issued, the statutory surety bond was nonoperative on the events herein.

■ Additionally, appellees did not respond to the problem raised that the bond was not in evidence but simply ignored the problem. They argue instead that they are entitled to the proceeds of the bond since John E. Watson "misrepresented to the surety that he intended to submit an application for a B–2 license." There is no reference made to the record to support this allegation and we can find no support for it. The fact is that the record contains practically nothing relating to the $2000 bond, other than referred to above. Further, appellees argue that "they are entitled to bind the surety as they accepted the surety's offer, based on the bond, to answer for the alleged corporation used by John E. Watson in procuring the contract for the construction of the apartment building." Here again no reference is made to the record supporting this estoppel type argument, and we can find no evidence supporting it in the record.

■ Finally, the corporation John E. Watson Co. Inc. is the named principal on the $2000 bond. Finding No. 12 states that appellants "John Watson and/or Donald Watson acted as individuals at all times during their relationship with plaintiffs and were not acting as a corporation or for or on behalf of a corporate entity." Finding 22, supra, finds that the corporate bond was issued pursuant to A.R.S. § 32–1152. Conclusion of Law 4, supra, holds the $2000 bond liable. Obviously, Finding 12, that the Watsons were acting as individuals does not support Conclusion of Law 4, that the corporate bond was rendered liable, since such a conclusion is incongruent. *See Western Surety Co. v. Horrall,* supra.

Our disposition settles the additional questions raised relating to the failure to introduce the bond into evidence, and the failure to join John E. Watson, Inc. as a party.

## THE $500 BOND

Appellants contend that the $500 performance bond (No. 02–05149–03) supporting John E. Watson's C–31 Masonry Contractor's License could not be reached because the contract was found by the court to be a partnership or joint venture between John Watson and Donald Watson and no such contractor's license was issued.

The findings do indicate a partnership arrangement between John and Donald Watson. They also correctly find that only John Watson held a valid C–31 Contractor's License, and that neither John nor Donald Watson possessed a general or special contractor's license authorizing them jointly or severally to build the apartment involved herein. Therefore, appellants contend that since the partnership or joint venture could not maintain an action against the owner for a balance due on the contract, citing *Nickels v. Walker,* 74 N.M. 545, 395 P.2d 679 (1964), the $500 performance bond of John Watson cannot be reached.

 This argument seeks to avoid the purpose of the bonding provisions. The public purpose of the contractor's licensing law and bonding requirements is to protect the public against unscrupulous or unqualified persons purporting to have the capacity, knowledge or qualifications of a properly licensed contractor. *Miller v. Superior Court in and for County of Pima,* 8 Ariz. App. 420, 446 P.2d 699 (1968). While it is true as held in *Nickels,* that a contractor who exceeds his license cannot sue for a balance due on a contract,[1] there is no authority cited that would permit a licensed contractor or his surety to escape liability by the simple device of not complying with the law. Such an argument has no merit.

The $500 performance bond is a statutory bond to insure "any person who after entering into a construction contract with the principal is damaged by the failure of the principal to perform the contract." A.R.S. § 32–1152. The record shows that all of these requirements were met and this bond was properly subject to the judgment.

The judgment is reversed as to the $2000 bond (No. 02–05149–05) and affirmed as to the $500 bond (No. 02–05149–03). Accordingly the judgment is modified by reducing Sentry Insurance Co.'s liability under its bond to $500. When such sum is paid to appellees, its liability will be satisfied.

WREN, J., concurs.

SCHROEDER, Presiding Judge, specially concurring:

I agree with the majority that the $2,000 bond did not cover this contract. This is because the trial court found that the principal on the bond was a corporation, and the contracting entity was an individual. There is no indication that the bond was intended to cover anything other than contracting activities of the corporation.

I do not join, however, in the majority opinion's suggestion that the bond was of no effect whatsoever until the contractor's license had actually issued. I see nothing in our statutes which prohibits a contractor from obtaining a bond prior to being licensed, and such a prohibition would not in my view facilitate the statutory policy of protecting the public. Doubtless the surety and the principal could by contractual agreement provide that the bond would not be effective until the issuance of a license. In this case, in my opinion, there is no basis for finding that the parties made such an agreement, and certainly the trial court made no such determination.

---

1. See also *Northern v. Elledge,* 72 Ariz. 166, 232 P.2d 111 (1951).