578 P.2d 1028

**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Appellant,

v.

**Alfred F. BROSS, a single man, and Harold C. Rudolph and Helen C. Rudolph, husband and wife, Appellees.**

No. 2 CA–CIV 2745.

Court of Appeals of Arizona,
Division 2.

April 20, 1978.

Cannon, Dalzell & Schwanbeck by Hiram A. Cannon, Tucson, for appellant.

Mesch, Marquez & Rothschild, P. C. by Alfred C. Marquez and Patricia Wendel, Tucson, for appellees.

OPINION

HATHAWAY, Judge.

United States Fidelity and Guaranty Company (USF&G), surety on a mortgage broker bond in the penal sum of $5,000.00, appeals from an amended judgment against it on this bond and in favor of plaintiffs-appellees Alfred Bross and Harold and Helen Rudolph. Joined as defendants with USF&G in this action were Kenneth Seiler, the named principal on the bond, Ray Stafford, his partner in the firm of Triken Enterprises, and Walter Prideaux. Appellees alleged that they lent Seiler and Stafford $35,000 to be used to obtain financing for Prideaux but that when the application for financing was rejected, defendants failed, contrary to their agreement with appellees, to return this money to them. They further alleged that they were entitled, due to the fraudulent acts of Stafford and Seiler, to the benefit of the bond executed by USF&G and Seiler.

At the time of trial, Stafford and Seiler were deceased and their estates had been substituted as party defendants. USF&G was the only defendant who appeared. Trial was to the court, sitting without a jury. Bross, the sole witness for appellees, was permitted to testify, over USF&G's objections, to conversations with Stafford, Seiler and Prideaux. USF&G also objected to the admission into evidence of depositions of Seiler and Prideaux taken in another lawsuit and the deposition of Stafford taken in this action.

On appeal, USF&G's first argument is that it is entitled to have judgment entered in its favor because the bond it executed covers Seiler acting by himself in the

capacity of a mortgage broker and does not cover Stafford or the two of them acting in concert. For purposes of this argument only, USF&G does not challenge the evidentiary rulings made by the trial court. We agree with USF&G that it is not liable on the bond for the fraudulent acts of Stafford and Seiler operating as Triken Enterprises and we need not reach the evidentiary issues raised in USF&G's second argument.

On July 11, 1972, USF&G as surety and Seiler as principal executed a mortgage broker bond pursuant to A.R.S. Sec. 6–904:

"A. No person may act as a mortgage broker if he is not licensed under this chapter.

\* \* \* \* \* \*

F. Every person, firm, association, or corporation licensed as a mortgage broker shall deposit with the superintendent, prior to doing business as such, a bond of five thousand dollars, executed by the licensee as principal and a surety company authorized to do business in this state as surety. . . ."

There is nothing in the record, however, to indicate that Seiler ever applied for a license after depositing the bond. Stafford's deposition testimony was that the license was issued under the name of Triken Enterprises. In March of 1973, about eight months after the bond was posted, Stafford and Seiler began working together as Triken Enterprises for the purpose of conducting a mortgage brokerage business. Stafford was never licensed as a broker. They agreed to split expenses and income.

In the fall of 1973 Prideaux was attempting to secure financing for a building project. Triken was to receive a commission of 1% of the amount loaned in exchange for obtaining the financing. The mortgage company asked that a $35,000 fee accompany the application, but Prideaux did not have the required cash. Seiler called Bross, explained that he and his associate Stafford needed $35,000 to secure financing for Prideaux, and asked for a loan. Bross was willing to advance $25,000 and his neighbors, the Rudolphs, agreed to furnish the remaining $10,000. They delivered two checks to Seiler and Stafford, one for $25,000 from Bross and one for $10,000 from the Rudolphs, dated December 4, 1973, and payable to Triken Enterprises. The agreement, evidenced by a promissory note from Prideaux and secured by a realty mortgage, was that if the mortgage company refused to approve the loan, then $35,000 plus $3,500 in interest would be returned to appellees. If the financing was obtained, then appellees would receive $38,500 plus a bonus of $35,000 from Triken. This part of the agreement was evidenced by a promissory note for $35,000 signed by Seiler and Stafford.

The application for financing was eventually rejected and Triken received a $35,000 check from the mortgage company in April or May of 1974. It is unclear to whom the check was made out and what happened to the money. Bross testified that Prideaux told him that Stafford demanded $10,000 of the $35,000 before he would turn the check over to Prideaux. Stafford's deposition testimony was that Prideaux received the entire amount of $35,000. It is clear, though, that no part of the $35,000 was ever returned to appellees. About the same time that the mortgage company returned the $35,000, Stafford and Seiler dissolved their partnership. Seiler continued to operate as Triken Enterprises. Appellees learned in November of 1974 that their $35,000 had previously been returned by the mortgage company.

The court made the following findings:
"1. That the actions of the defendants Ray Stafford and Kenneth Roland Seiler, acting in consort, were such as to constitute a fraud on the part of the defendants against the plaintiffs.

2. That the fraudulant [sic] acts occurred over a period of time of approximately December 4, 1973, up through and including the latter part of November of 1974.

\* \* \* \* \* \*

4. The Court further finds from the evidence presented to it that the actions of the defendant Kenneth Roland Seiler, while acting in consort with and through the defendant Ray Stafford, were such

that they were actions performed as a Mortgage Broker as set out in Title 6, Chapter 9, of the Arizona Revised Statutes, and as such that the defendant United States Fidelity and Guaranty Company Mortgage Broker Bond No. 60–0130–1345–72 covers the actions of the defendant Kenneth Roland Seiler, that were to the detriment of the defendant in this case."

Appellees were awarded judgment against Stafford and Seiler for $35,000 and against USF&G for $5,000.

Appellees contend that the trial court correctly ruled that the bond of appellant-surety was available to effect the statutory intent of protecting persons injured by the fraud of partners in a licensed mortgage brokerage firm, even where the bond was issued to one partner individually. The decision of our Supreme Court in *Western Surety Company v. Horrall*, 111 Ariz. 486, 533 P.2d 543 (1975), is contrary to appellees' contention. In that case, Western Surety Company, pursuant to A.R.S. Sec. 28–1305,[1] issued a surety bond to one McConnell, an officer of Frontier Motors, Inc., as the sole named principal. The license, however, was issued to Frontier Motors, Inc. The court refused to hold Western liable for a judgment against Frontier Motors, Inc. on the basis of a surety bond issued to McConnell, stating:

"Suretyship contracts are construed according to the same rules applicable to other contracts. *Cushman v. National Surety Corp. of New York*, 4 Ariz.App. 24, 417 P.2d 537 (1966); Restatement, Security § 88. If a company agrees to be a surety for a particular principal, the contract is understood to be only for that named principal. Any material change in

the obligation not assented to by the surety as one of the parties to the contract will discharge the surety from liability. This rule is applicable when there is a change of principals. In *Bianco v. Fireman's Fund Indemnity*, 72 Ariz. 181, 232 P.2d 386 (1951), it was said that the liability of a surety can only arise out of a bond contract made with the principal and it does not extend to activities of the principal in conjunction with others. If a surety undertakes responsibility for the performance of another, it does not then mean to undertake responsibility for the actions of the named principal performed jointly with a third person. This reasoning was applied to a partnership in *Bianco v. Fireman's Fund Indemnity, supra*, and it applies equally to a bonded individual who is also an officer of a corporation. We cannot hold Western liable for the activities of an entity that it did not bond. The fact that the corporation was required to be bonded by law does not impose an obligation on Western absent a contractual relationship." 111 Ariz. at 487, 533 P.2d at 544.

Appellees agree that the obligation of a surety cannot be extended beyond the terms of its bond nor to one not a party thereto but argue that this principle is subject to an exception, i. e., " ' . . . Unless there be some express provision of law, which would be read into the bond as a part thereof . . .' " *Ward v. Johnson*, 72 Ariz. 213, 216, 232 P.2d 960, 962 (1951). Where a corporate surety undertakes a surety obligation on a bond pursuant to a specific statutory requirement, its liabilities are measured by the terms of the statute. *United States Fidelity & Guaranty Compa-*

---

1. "Sec. 28–1305. Annual license fee; bond of applicant

A. Applications [for motor vehicle license to sell used cars] shall be accompanied by the filing fee prescribed in Sec. 28–205, and each licensee shall pay the annual license fee prescribed in Sec. 28–205.

B. Applications shall also be accompanied by a bond in a form to be approved by the superintendent, and shall be in such amount, not less than one thousand dollars, as the superintendent prescribes, and executed by a surety com-

pany authorized to transact business in this state as surety thereon, with the applicant as principal obligor thereon, and the state as obligee. The bond shall be conditioned that the applicant will faithfully comply with all the provisions of law and that the bond shall be noncancellable for the period of time for which the license to the applicant is issued. The bond shall inure to the benefit of any person who suffers loss by reason of any unlawful act of the licensee."

*ny v. St. Mary's Hospital of Tucson*, 10 Ariz.App. 346, 458 P.2d 966 (1969); *Porter v. Eyer*, 80 Ariz. 169, 294 P.2d 661 (1956).

The statutory provision on which appellees rely is one sentence in A.R.S. Sec. 6–904(F) which reads:

"Only one bond is required for any person, firm, association or corporation irrespective of the number of mortgage brokers who are employed by or are members of such firm, association or corporation."

They urge that this statutory term, read into the bond, distinguishes this case from *Horrall* and changes the result. They maintain that the decision in *Horrall* was based on A.R.S. 28–1305 from which this language requiring only one bond for an entire firm and its employees is missing.

█ Reading the terms of A.R.S. Sec. 6–904 into the mortgage broker bond, we are convinced that such bond does not inure to the benefit of appellees. A.R.S. Sec. 6–904(F) requires that the "licensee as principal" execute the mortgage broker bond. Only one bond is required for any firm licensed as a mortgage broker *which has prior to doing business as such executed a bond as principal.* The licensee here, Triken Enterprises, did not execute the bond. Though statutory bonds should be construed in light of the purpose as expressed by the statute, *State Surety Company v. Lensing*, 249 N.W.2d 608 (Iowa 1977), they are not to be extended by implication beyond the clearly expressed intent of the statute. *Culver v. Mid-Continent Casualty Company*, 526 P.2d 496 (Okl.1974).

We find the language of *Horrall* to be controlling here. USF&G agreed to issue a bond to cover only the actions of the principal, Seiler, and not those of Triken Enterprises. This would be a material change in obligation not assented to by USF&G as one of the parties to the contract. The hazards of a surety would be enlarged by a partnership transaction. The fact that the licensee, Triken Enterprises, was required to be bonded by law does not impose an obligation on the surety absent a contractual relationship and thus appellant was not liable for activities of a firm it did not bond.

Appellees also rely on *Watson v. Welton*, 115 Ariz. 76, 563 P.2d 331 (1977), as support for their position that USF&G is liable on the bond. In *Watson*, one John Watson was a masonry contractor who held a C–31 contractor's license and had posted with the Registrar of Contractors a license bond in the amount of $500. Both the bond and the license were in the name of John Watson. Subsequently, Watson acquired another bond in the amount of $2,000 in the name of John E. Watson Co. Inc. The $2,000 bond was obtained in preparation for acquiring a B–2 contractor's license. The B–2 license was never issued. Watson encountered problems on a building project and the owner filed suit. The trial court found that John Watson was acting in a partnership arrangement with Donald Watson and entered judgment against the Watsons and against the surety on both bonds.

The judgment against the surety on the $2,000 bond was reversed on appeal since the B–2 contractor's license was never issued. The court then discussed the fact that the bond for the B–2 license named the corporation as principal:

"Finally, the corporation John E. Watson Co. Inc. is the named principal on the $2000 bond. Finding No. 12 states that appellants 'John Watson and/or Donald Watson acted as individuals at all times during their relationship with plaintiffs and were not acting as a corporation or for or on behalf of a corporate entity.' Finding 22, supra, finds that the corporate bond was issued pursuant to A.R.S. Sec. 32–1152. Conclusion of Law 4, supra, holds the $2000 bond liable. Obviously, Finding 12, that the Watsons were acting as individuals does not support Conclusion of Law 4, that the corporate bond was rendered liable, since such a conclusion is incongruent. *See Western Surety Co. v. Horrall*, supra." (Emphasis in original) 115 Ariz. at 79, 563 P.2d at 334.

This part of the decision supports USF&G's position. A finding that the surety on a corporate bond could not be liable for the acts of the Watsons individually is consistent with *Horrall*.

The court then went on to hold that the surety was liable on the $500 C–31 license bond, notwithstanding the fact that the principal on the bond was John Watson and the faulty construction was the act of the partnership comprised of John Watson and Donald Watson. However, the facts on which the *Watson* court predicated surety liability are absent here. Both the surety bond and the license were in the name of John Watson. The contractor's licensing law and bonding requirements were thus met. The second part of the *Watson* decision is distinguishable from the case sub judice where no license was issued to the bond principal, Seiler, and the bond makes no reference to the licensee, Triken Enterprises.

Reversed.

RICHMOND, C. J., and HOWARD, J., concur.