713 P.2d 291

**BROWN WHOLESALE ELECTRIC COMPANY, a California corporation, Plaintiff-Appellant,**

**v.**

**MERCHANTS MUTUAL BONDING COMPANY, a corporation, Defendant-Appellee.**

**No. 1CA–CIV6563.**

Court of Appeals of Arizona, Division 1, Department D.

Dec. 24, 1984.

Motion for Reconsideration Denied Feb. 15, 1985.
Petition for Review Denied April 24, 1985.

Strong & Pugh, P.A. by William K. Strong, Phoenix, for plaintiff-appellant.

Lewis & Roca by Michael J. Holden, Paul G. Ulrich, Phoenix, for defendant-appellee.

## OPINION

BROOKS, Presiding Judge.

In this appeal, we must decide whether the trial court erred in granting summary judgment in favor of appellee, Merchants Mutual Bonding Company (Merchants), and against appellant, Brown Wholesale Electric Company (Brown). We affirm.

Three issues are raised on appeal:

1. Does a contractor's license bond under the 1981 amendment to A.R.S. § 32–1152 exclude materials used by a contractor in non-residential jobs after the effective date of the 1981 amendment.

2. Did the July 1, 1981 amendments to Title 32, Chapter 10, A.R.S. narrow the scope and application of contractor's license bonds executed before and effective at the time of the amendments.

3. Does the 1982 amendment to A.R.S. § 32–1152(E) have retroactive effect and apply to lawsuits filed before its effective date, July 24, 1982.

On February 4, 1982, Brown, a wholesale supplier of electrical materials, filed an action against SWL Electric Corporation (SWL) and Merchants. A default judgment was entered against SWL, but Merchants disputed its liability to Brown. Both Brown and Merchants moved for summary judgment. In their motions for summary judgment, Brown and Merchants agreed upon the following facts.

On February 27, 1981 SWL, as principal and Merchants, as surety, executed a contractor's license bond. Under its specific terms, the bond was issued "to comply with the provisions of A.R.S. § 32–1152" and bound the parties "unto the State of Arizona for the benefit of any person who after entering into a construction contract with the Principal is damaged by the failure of the Principal to perform the contract and for the benefit of any person furnishing labor or materials used in the direct performance of a construction contract...." It was further provided that nothing in the bond "shall be construed to be in conflict with the provision of A.R.S. § 32–1152." Subsequently, during the period July, 1981 through January, 1982, SWL purchased certain materials from Brown and used those materials on non-residential construction projects. SWL did not pay Brown for those materials and consequently, Brown sued SWL and its surety, Merchants.

Merchants argued that its bond did not cover materials purchased after June, 1981, when those materials were used in non-residential construction projects. The trial court agreed, denied Brown's motion for summary judgment, and granted Merchants' motion for summary judgment. This appeal followed.

The central issue in this appeal is whether Brown may properly make a claim against Merchants, as SWL's surety, for materials furnished to SWL during the period July, 1981 through January, 1982, which were used in non-residential construction projects. Since SWL's bond was required and issued pursuant to A.R.S. § 32–1101 et seq., we set out the rather complex legislative history of the pertinent provisions.

Prior to July 1, 1981, A.R.S. § 32–1101 provided as follows:

In this chapter, unless the context otherwise requires, the term "contractor" is synonymous with the term "BUILDER" and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or

to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, OR PROVIDE MECHANICAL OR STRUCTURAL SERVICE FOR ANY SUCH STRUCTURE, PROJECT, DEVELOPMENT OR IMPROVEMENT. The term contractor includes subcontractors and specialty contractors, floor covering contractors and landscape contractors other than gardeners.

See Laws 1977, ch. 153, § 1 (capitalized portion indicates addition to statute).

Prior to July 1, 1981, A.R.S. § 32–1152(A) & (B) provided as follows:

A. Before granting an original contractor's license the registrar shall require of the applicant a surety bond in a form acceptable to the registrar or a cash deposit as provided in this section. No contractor's license may be renewed unless the applicant's surety bond or cash deposit is in full force and effect.

B. The bonds or cash deposit as prescribed by this chapter shall be in amounts fixed by the registrar with the following schedules after giving due consideration to the volume of work contemplated by the applicant:

1. General engineering contractors as determined by the registrar are required to furnish a surety bond or cash deposit in an amount of not more than fifteen thousand dollars and not less than five thousand dollars.

2. Subclassifications of general engineering contractors as determined by the registrar are required to furnish a surety bond or cash deposit in an amount of not less than one thousand dollars and not more than ten thousand dollars.

3. General building contractors and sub-classifications of general building contractors are required to furnish a surety bond or cash deposit in an amount of not more than fifteen thousand dollars and not less than five thousand dollars.

4. Specialty contractors are required to furnish a surety bond or cash deposit in an amount of not more than seven thousand five hundred dollars and not less than one thousand dollars for each specialty license granted by the registrar.

See Laws 1980, 3rd. S.S., ch. 1, § 8.

Prior to July 1, 1981, A.R.S. § 32–1152(D) provided, in pertinent part, as follows:

D. The bonds or deposit required by this chapter shall be for the benefit of any person covered by this subsection. The bond or deposit shall be subject to claims by the registrar of contractors for failure to pay any sum required pursuant to this chapter or by any person who, after entering into a construction contract with the principal is damaged by the failure of the principal to perform the contract or by any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance. of a construction contract. The person seeking recovery from the bond or cash deposit shall maintain an action at law against the contractor if claiming against the cash deposit or against the contractor and surety if claiming against the surety bond....

See Laws 1980, 3rd S.S., ch. 1, § 8.

In 1981, the Arizona legislature made major changes with respect to the statutory scheme set forth in A.R.S. § 32–1101 et seq. The purpose of the amendments was explained in the notes to the session laws:

The legislature finds that regulation of the commercial and industrial construction business, including public works, by the registrar of contractors agency is not necessary for the protection of the public health, safety and welfare, and that it is in the public interest to deregulate such business. It is the purpose and intent of the legislature to continue the registrar of contractors agency in order to protect the public health, safety and welfare by providing for the continued licensing, bonding and regulation of contractors engaged in residential construction. It is the further purpose of the legislature to provide improved protection for owners and lessees of property who contract for

the construction or alteration of residential structures by establishing the contractors' recovery fund and the contractors' recovery fund board.

*See* note to A.R.S. § 32–1101 (West Supp. 1981–82), citing Laws 1981, ch. 221, § 1. As for the specific changes, A.R.S. § 32–1101 was amended effective July 1, 1981, to read as follows:

A. For the purposes of this chapter, "contractor" is synonymous with the term "home builder" and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, within residential property lines:

1. Construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any residential structure, such as houses, townhouses, condominiums or cooperative units, and apartment complexes of not more than four units, including appurtenances.

2. Connect such residential structure to utility service lines and metering devices and the sewer line.

3. Provide mechanical or structural service for any such residential structure.

B. "Contractor" includes subcontractors and specialty contractors, floor covering contractors and landscape contractors other than gardeners.

C. Only contractors as defined in this section are licensed and regulated by this chapter.

Laws 1981, ch. 221, § 2.

A.R.S. § 32–1131 was added to the statutory scheme and provides as follows:

In this article, unless the context otherwise requires:

1. "Assessment" means the contribution by a contractor to the contractors' recovery fund.

2. "Board" means the contractors' recovery fund board.

3. "Contractor" means a licensed contractor as defined in § 32–1101.

4. "Fund" means the contractors' recovery fund.

5. "Person injured" means any owner of real property or his successor in interest or lessee who contracts directly with a licensed contractor or indirectly with a licensed subcontractor of such contractor for the construction of or improvements or alterations to a residential structure and appurtenances thereto.

Laws 1981, ch. 221, § 18.

A.R.S. § 32–1152(A) remained the same after the 1981 revisions, but subsection B was amended to read as follows:

B. The bonds, or the cash deposit as provided in this section, shall be in amounts fixed by the registrar with the following schedules after giving due consideration to the volume of work and the classification contemplated by the applicant:

1. General contractors and subclassifications of general contractors are required to furnish a surety bond or cash deposit in an amount of not more than fifteen thousand dollars and not less than five thousand dollars.

2. Specialty contractors are required to furnish a surety bond or cash deposit in an amount of not more than seven thousand five hundred dollars and not less than one thousand dollars. Effective January 1, 1983, the minimum bond for specialty contractors receiving a new license or renewing a current license is two thousand dollars.

Laws 1981, ch. 221, § 20. Subsection C was added in 1981 and provides as follows:

C. Contractors shall also either:

1. Furnish an additional surety bond or cash deposit in the amount of ten thousand dollars solely for actual damages including reasonable attorney fees suffered by persons injured as described in § 32–1131.

2. Participate in the contractors' recovery fund and pay the assessment prescribed by § 32–1132.

Laws 1981, ch. 221, § 20.

Subsection D became subsection E and, as amended, provides in pertinent part as follows:

E. The bonds or deposit required by subsection B of this section shall be for the benefit of and shall be subject to claims by the registrar of contractors for failure to pay any sum required pursuant to this chapter or by any person who, after entering into a construction contract with the principal, is damaged by the failure of the principal to perform the contract or by any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract. The bond or deposit required by subsection C, paragraph 1 of this section is for the benefit of and is subject to claims only by persons injured as described in § 32–1131. The person seeking recovery from the bond or cash deposit shall maintain an action at law against the contractor if claiming against the cash deposit or against the contractor and surety if claiming against the surety bond....

Laws 1981, ch. 221, § 20.

In 1982, the Arizona legislature amended A.R.S. § 32–1152(E) to read as follows:

E. The bonds or deposit required by subsection B of this section shall be for the benefit of and shall be subject to claims by the registrar of contractors for failure to pay any sum required pursuant to this chapter or by any person who, after entering into a construction contract *involving a residential structure* with the principal, is damaged by the failure of the principal to perform the contract or by any person furnishing labor, materials or construction equipment on a rental basis used in the direct performance of a construction contract *involving a residential structure.* The bond or deposit required by subsection C, paragraph 1 of this section is for the benefit of and is subject to claims only by persons injured as described in § 32–1131. The person seeking recovery from the bond or cash deposit shall maintain an action at law against the contractor if claiming against the cash deposit or against the contractor and surety · if claiming against the surety bond....

Laws 1982, ch. 194, § 1 (italicized portion indicates addition to statute). This amendment was filed on April 22, 1982 and there was no provision for retroactive application.

Brown argues that the plain language of A.R.S. § 32–1152(E) for the period July, 1981 through January, 1982 provided that the bond required by subsection B of A.R.S. § 32–1152 be available to "any person furnishing ... materials ... used in the direct performance of a construction contract." Here, Brown undoubtedly furnished materials which were used in the direct performance of a construction contract, albeit non-residential construction. With this factual predicate, Brown relies upon the following passage from *Employment Security Commission of Arizona v. Fish,* 92 Ariz. 140, 375 P.2d 20 (1962), wherein our Supreme Court stated:

It is so axiomatic as to need no citation that the object of statutory interpretation is to determine the meaning and intent of the legislature. If the words of the statute are plain and unambiguous, courts will not go outside the language itself for interpretation. *Ernst v. Collins,* 81 Ariz. 178, 302 P.2d 941 (1956).

92 Ariz. at 142, 375 P.2d at 22. *See also City of Mesa v. Killingsworth,* 96 Ariz. 290, 394 P.2d 410 (1964); *Arizona Lotus Corp. v. City of Phoenix,* 136 Ariz. 22, 663 P.2d 1013 (App.1983). Brown claims that there is no need to resort to the rules of statutory construction in this case, since Brown did indeed supply materials "used in the direct performance of a construction contract."

■ The flaw in Brown's argument, however, is that while words used in a statute ought to be accorded their obvious and natural meaning, *Toney v. Bouthillier,* 129 Ariz. 402, 631 P.2d 557 (App.1981), words will not be interpreted in their ordinary sense *if it appears from context* that a different meaning should control. *Castregon v. Huerta,* 119 Ariz. 343, 580 P.2d 1197 (1978). In A.R.S. § 32–1152(E), the phrase "construction contract" must be taken in context.

■ At the time Brown supplied the materials to SWL, A.R.S. § 32–1101 *et seq.* only regulated the *home* builder. Indeed, in Laws 1981, ch. 221, § 1, the legislature expressed its clear intent to deregulate the commercial and industrial construction business. More specifically, A.R.S. § 32–1101 was revised by the Arizona legislature in 1981 to define "contractor" as synonymous with "home builder." The contractor's license referred to in A.R.S. § 32–1152(A) was only required for residential work. Consequently, taken in context, the phrase "construction contract" applied to construction contracts involving residential structures.

■ That the phrase "construction contract" should be taken in context is consistent with the principles of statutory construction that a statute must be construed as a whole, *see Golder v. Department of Revenue State Board of Tax Appeals*, 123 Ariz. 260, 599 P.2d 216 (1979); *City of Phoenix v. Kelly*, 90 Ariz. 116, 366 P.2d 470 (1961); *State v. Standsberry*, 114 Ariz. 351, 560 P.2d 1258 (App.1976), and that statutes dealing with the same subject should be read together and harmonized if at all possible. *See Peterson v. Flood*, 84 Ariz. 256, 326 P.2d 845 (1958); *see also State v. Arizona Corporation Commission*, 94 Ariz. 107, 382 P.2d 222 (1963); *Desert Waters, Inc. v. Superior Court*, 91 Ariz. 163, 370 P.2d 652 (1962). Statutory construction requires that the provision of a statute be read and construed in context with the related provisions and in light of its place in the statutory scheme. *Romero v. Stines*, 18 Ariz.App. 455, 503 P.2d 413 (1972).

Because we conclude that the 1981 amendment to A.R.S. § 32–1152 excludes materials used in non-residential construction, we need not address whether the 1982 amendment to A.R.S. § 32–1152(E) applies retroactively to suits filed before July 24, 1982.

The final issue is whether the amendments to Title 32, Chapt. 10, enacted after the Merchants' bond for SWL became ef-fective but before Brown sold materials to SWL for non-residential construction, narrowed the scope and applicability of the contractor's license bond to residential construction only. Brown argues that the scope of the statutory bond is determined by the statute in effect at the time of the execution of the bond. Since the bond here was issued prior to the changes brought about by Laws 1981, ch. 221, Brown seeks to claim against the bond supplied by Merchants to SWL pursuant to pre-July, 1981 law.

■ A contractor's license is created by statute and a statutory surety bond is coterminous with the license. *See United States Fidelity and Guaranty Co. v. Bross*, 118 Ariz. 599, 578 P.2d 1028 (App. 1978). Indeed, a contractor's license bond cannot exist without an accompanying contractor's license. *See Watson v. Welton*, 115 Ariz. 76, 563 P.2d 331 (App.1977). When a corporate surety undertakes an obligation on a bond pursuant to a specific statutory requirement, its liabilities are measured by the terms of that statute. *Watson v. Welton*, 115 Ariz. 76, 563 P.2d 331 (App.1977); *See United States Fidelity and Guaranty Co. v. St. Mary's Hospital of Tucson*, 10 Ariz.App. 346, 458 P.2d 966 (1969). Brown does not seriously dispute these principles but contends that although the terms of a statute may be used to expand the scope of a statutory bond, the statute cannot be utilized to narrow the bond's scope. We disagree.

In *United States Fidelity and Guaranty Co. v. Christoffel*, 115 Ariz. 507, 566 P.2d 308 (App.1977), the court stated:

[W]here a bond is given under the authority of a statute in force when it is executed, in the absence of anything appearing to show a different intention, it will be presumed that the intention of the party was to execute such bond as the law required, that such statute constitutes a part of the bond as if incorporated in it, and that the bond must be interpreted in conjunction with the statute as

construed by the courts. Such a bond must be given the effect which in reason must have been intended by the statute. *Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read into it. Porter v. Eyer,* 80 Ariz. 169, 294 P.2d 661 (1956).

115 Ariz. at 509, 566 P.2d at 310. (Emphasis added.)

Brown argues, however, that the bond is forever governed by the law which existed at the time of the bond's execution and since the amendments to A.R.S. § 32–1152 occurred after the bond was executed, the pre-amendment provisions of the statute apply. Our analysis of the bond, which reflects the clear intention of the parties, leads us to conclude otherwise. Since the only purpose for the bond was to satisfy the statutory requirement, the parties' intention would only be served by limiting the scope of the bond's liability to conform to the statute, as amended. Because licenses for commercial construction expired as of July 1, 1981, and the only license that could be renewed was one for residential construction, bonds which were required as a condition of licensure pursuant to A.R.S. § 32–1152 ceased to have any application to commercial construction after July 1, 1981.

In summary, Brown supplied materials to SWL for a commercial construction contract at a time when SWL was not and could not be licensed for commercial construction. The contractor's license bond, which was continuous in nature and coterminous with the license, applied only to residential construction after the effective date of the amendments to A.R.S. § 32–1152. Brown, therefore, has no claim against the bond.

For the foregoing reasons, the judgment of the trial court is affirmed.

EUBANK and KLEINSCHMIDT, JJ., concur.